Alvin J. **HOLLMAN**, Plaintiff-Appellee,

v.

**PRATT & WHITNEY AIRCRAFT, etc.,**
Defendant-Appellant.

Howard B. **BLAKELY**, Plaintiff-Appellee,

v.

**PRATT & WHITNEY AIRCRAFT, etc.,**
Defendant-Appellant.

No. 29283.

United States Court of Appeals,
Fifth Circuit.

Dec. 15, 1970.

Rehearing Denied and Rehearing En
Banc Denied March 1, 1971.

W. Reynolds Allen, Greene, Hogg &
Allen, Miami, Fla., for defendant-appellant.

Beverly R. Worrell, Regional Atty. U.
S. Dept. of Labor, Atlanta, Ga., Alan S.
Rosenthal, Robert E. Kopp, Attys., Dept.
of Justice, Washington, D. C., William
D. Ruckelshaus, Asst. Atty. Gen., Robert
W. Rust, U. S. Atty., Miami, Fla., for
plaintiff-appellee.

Before. BELL, THORNBERRY and
CLARK, Circuit Judges.

THORNBERRY, Circuit Judge:

In this appeal an employer attacks as
erroneous the district court's judgment
awarding vacation pay under Section 9
of the Universal Military Training and
Service Act[1] to two returning employees
for the year in which they left appellant's employ to enter the military service. We affirm.

Plaintiffs-appellees, Alvin J. Hollman and Howard B. Blakely, are veterans who were employed by defendant-appellant Pratt & Whitney Aircraft Division of United Aircraft Corporation
(Pratt & Whitney) prior to their entry
into military service. Hollman began
working for Pratt & Whitney in 1960
and continued in that employment until
December 4, 1964, when he left his position to serve in the armed forces. Upon
his release from active duty Hollman applied for reinstatement and was re-em-

---

1. 62 Stat. 614, as amended, 50 U.S.C.War Appendix § 459.

ployed by the company on November 29, 1966. Similarly, Blakely entered Pratt & Whitney's employ in 1961 and remained there until March 6, 1964, when he was summoned to military service. After satisfactorily completing his tour of duty, Blakely applied for reinstatement and was remployed on March 22, 1966.[2]

At the completion of the 1966 work year, Hollman received $20.83 in vacation pay based on his gross earnings from November 29, 1966 through December 31, 1966. At the same time Blakely received $192.93 in vacation pay based on his gross earnings from March 22, 1966 through December 31, 1966. Both employees asserted that they were entitled to additional vacation pay for 1966 for the portion of the year they spent in military service and to vacation pay for 1964 and 1965. The applicable bargaining agreements[3] and company rules to which appellees were subject

2. Neither Hollman nor Blakely is presently employed by Pratt & Whitney.

3. The relevant provisions of the collective bargaining agreement are:
SECTION 3.—Vacation Provisions for 1964 and 1965.
(a) A vacation of three (3) working days will be allowed in 1964 and 1965 to an hourly-rated employee who on December 31 of the preceding year had been continuously and actively in the employ of the company for at least six (6) months prior thereto.
(b) A vacation of one (1) week consisting of five (5) working days will be allowed in 1964 and 1965 to an hourly-rated employee who on December 31 of the preceding year had been continuously and actively in the employ of the company for at least one (1) year prior thereto.
(c) A vacation of two (2) weeks consisting of ten (10) working days will be allowed in 1964 and 1965 to an hourly-rated employee who on December 31 of the preceding year had been continuously and actively in the employ of the company for a period of at least two (2) years prior thereto.
(d) A vacation of three (3) weeks consisting of fifteen (15) working days will be allowed in 1964 and 1965 to an hourly-rated employee who on December 31 of the preceding year had been continuously and actively in the employ of the company for a period of at least twelve (12) years prior thereto.
(e) An hourly-rated employee who does not meet the requirements of either Subsection (a), (b), (c), or (d) of this section shall receive no vacation, and every employee who does meet the requirements of one or more of these subsections shall receive only the vacation specified in that subsection which gives him the longest vacation.
(f) Any employee who is eligible for a vacation under this section shall receive a vacation or vacation pay even if he is not actively in the employ of the company on the day preceding the start of his scheduled vacation. Should an employee die, or should the employment of an employee be terminated during the vacation year for any reason, prior to taking the vacation accrued as of the preceding December 31, the vacation pay allowance will be paid.
SECTION 4.
(a) The vacation pay allowance for an employee whose eligibility for a vacation is established by Subsection (a) of Section 3 above shall be two per cent (2%) of such employee's gross earnings paid during the twenty-six (26) week period ending on December 31 of the year preceding the year in which the vacation is given.
(b) The vacation pay allowance for an employee whose eligibility for a vacation is established by Subsection (b) of Section 3 above shall be two per cent (2%) of such employee's gross earnings paid during the fifty-two (52) week period ending on December 31 of the year preceding the year in which the vacation is given.
(c) The vacation pay allowance for an employee whose eligibility for a vacation is established by Subsection (c) of Section 3 above shall be four per cent (4%) of such employee's gross earnings paid during the fifty-two (52) week period ending on December 31 of the year preceding the year in which the vacation is given.
*     *     *     *     *
(e) For the purpose of this section, gross earnings shall include all straight time pay, overtime pay, holiday pay, and shift premiums, but shall exclude money received as employee suggestion awards, Christmas bonus, and vacation pay; provided that where, during the period for which gross earnings are computed, an employee suffers a compensable injury requiring absence from work and consequent loss of pay, his gross earnings for the period shall be

stated that to be entitled to vacation pay an employee (1) must have been continuously and actively employed for at least six months prior to December 31 of the eligibility year (the year in which the vacation is earned); (2) must have been on the active payroll on December 31 of the eligibility year or, if he were on leave of absence, furlough or in the military service on December 31 of the eligibility year, must have returned to appellant's active payroll and employ before December 31 of the year immediately following the eligibility year;[4] and (3) must have had gross earnings[5] during the eligibility year to which to apply certain set percentages to arrive at the proper compensation.[6]

In accordance with these guidelines Pratt & Whitney refused appellees any vacation pay for 1964—even though they had gross earnings during the year—inasmuch as they were not on the active payroll as of December 31, 1964 and did not return to the company's active payroll and employ during 1965. In addition, since appellees were not on the active payroll as of December 31, 1965 and had no gross earnings during that year, they received no vacation pay for 1965. Both employees were on the active payroll as of December 31, 1966, however, and thus were awarded vacation pay for 1966 based on their actual gross earnings during that year. In response to Pratt & Whitney's determination to award them no further vacation pay, Hollman and Blakely filed this action in district court, alleging that the company's policy deprived them of their rights under Section 9 of the Universal Military Training and Service Act. The district court, though rejecting appellees' claims

for vacation pay for 1965 and the portions of 1964 and 1966 that they spent in military service, held that under Eagar v. Magma Copper Co., 389 U.S. 323, 88 S.Ct. 503, 19 L.Ed.2d 557 (1967), appellees were entitled to vacation pay for 1964 based on their actual gross earnings during that year. Accordingly, the court awarded Hollman $206.77 and Blakely $45.53, with interest at six percent from date of judgment. The sole question before the Court in this appeal by Pratt & Whitney is whether the trial court erred in granting vacation pay for 1964.[7]

At the heart of this controversy is Section 9 of the Universal Military Training and Service Act, the pertinent provisions of which follow:

(a) Any person inducted into the armed forces under this title * * * for training and service, who, in the judgment of those in authority over him, satisfactorily completes his period of training and service * * * shall be entitled to a certificate to that effect upon the completion of such period of training and service, which shall include a record of any special proficiency or merit attained. * * *

(b) In the case of any such person who, in order to perform such training and service, has left or leaves a position (other than a temporary position) in the employ of any employer and who (1) receives such certificate, and (2) makes application for reemployment within 90 days after he is relieved from such training and service or from hospitalization continuing

---

increased by an amount eight (8) times his base hourly rate exclusive of shift premiums on December 31 of the year preceding the year in which the vacation is given, for each regularly scheduled work day (but not to exceed five [5] days in any work week) during such absence from work.

4. The December 31 requirement is not part of the bargaining agreement but is simply a company rule.

5. See supra note 3, section 4(e).

6. See supra note 3, sections 4(a), (b) and (c).

7. Both appellees and appellant filed notices of appeal. Hollman and Blakely, however, withdrew their appeals on February 10, 1970, leaving but the single issue of 1964 vacation pay before this Court.

after discharge for a period of not more than one year—

\* \* \* \* \* \*

(B) if such position was in the employ of a private employer, such person shall—

(i) if still qualified to perform the duties of such position, be restored by such employer or his successor in interest to such position or to a position of like seniority, status, and pay; or

(ii) if not qualified to perform the duties of such position by reason of disability sustained during such service but qualified to perform the duties of any other position in the employ of such employer or his successor in interest, be restored by such employer or his successor in interest to such other position the duties of which he is qualified to perform as will provide him like seniority, status, and pay, or the nearest approximation thereof consistent with the circumstances in his case, unless the employer's circumstances have so changed as to make it impossible or unreasonable to do so \* \* \*.

\* \* \* \* \* \*

(c) (1) Any person who is restored to a position in accordance with the provisions of paragraph (A) or (B) of subsection (b) [of this section] shall be considered as having been on furlough or leave of absence during his period of training and service in the armed forces, shall be so restored without loss of seniority, shall be entitled to participate in insurance or other benefits offered by the employer pursuant to established rules and practices relating to employees on furlough or leave of absence in effect with the employer at the time such person was inducted into such forces, and shall not be discharged from such position without cause within one year after such restoration.

(2) It is declared to be the sense of the Congress that any person who is restored to a position in accordance with the provisions of paragraph (A) or (B) of subsection (b) [of this section] should be so restored in such manner as to give him such status in his employment as he would have enjoyed if he had continued in such employment continuously from the time of his entering the armed forces until the time of his restoration to such employment.

Pratt & Whitney argue that vacation pay is an "other benefit" under Section 459(c) (1) of the Act and assert that a veteran's entitlement to vacation pay therefore is limited by the statute to those rights "offered by the employer pursuant to established rules and practices relating to employees on furlough or leave of absence." Under appellant's analysis of the Act, an employer who denies a returning veteran vacation pay has not infringed upon his rights so long as he has treated the veteran precisely the same as he would have treated an employee on furlough or leave of absence for the same period of time that the returning veteran was in the service. Since under the applicable bargaining agreement and Pratt & Whitney's rules and procedures an employee on furlough or leave of absence for the period that Hollman and Blakely were in the military service would have received no vacation pay for 1964, appellant asserts it follows as a matter of law that appellees were not entitled to vacation pay for 1964 and that the district court thus erred in granting it to them.

This proffered path, however, was barricaded by the Supreme Court in Eagar v. Magma Copper Co., *supra*, which was decided per curiam on the authority of Accardi v. Pennsylvania R. Co., 383 U.S. 225, 86 S.Ct. 768, 15 L.Ed.2d 717 (1966).[8] *Accardi* arose out of a tugboat

---

8. At the time the Supreme Court decided *Accardi* and *Magma Copper*, a conflict existed among courts of appeals concern-
ing the "other benefits" clause. It had been held, on the one hand, that vacation pay came within the statutory protection

fireman's assertion that his employer was required by what is now Section 9 of the Act[9] to include his years in the armed forces in calculating his separation allowance, which increased in proportion to the length of time an employee had rendered "compensated service." The Second Circuit[10] read the statute as distinguishing between rights flowing from "seniority" and "fringe benefits." With regard to seniority rights, the Court held that veterans were entitled to be treated as if they had not left their civilian employment. "Fringe benefits," in the Court's view, were governed by the clause of Section 9(c) (1) dealing with "insurance or other benefits," which placed the returning veterans in no better position than an employee furloughed or on leave of absence for non-military reasons. Since the applicable bargaining agreement did not treat time spent by employees on furlough or leave of absence as "compensated service," the Second Circuit denied Accardi credit for his military service years. The Supreme Court reversed, holding that Congress intended the Act "* * * to preserve for the returning veterans the rights and benefits which would have automatically accrued to them had they remained in private employment rather than responding to the call of their country,"[11] without regard to the label that might be placed upon a particular employment benefit. The Court expressly rejected the Second Circuit's interpretation of the "insurance or other benefits" clause, holding that the clause was "* * * intended to add certain protections to the veteran and not to take away those which are granted him by [9(b) (B)]."[12]

In the subsequent case of *Magma Copper*, a collective bargaining agreement provided for paid vacations at the end of a work year to any employee who had been employed for at least one year and had worked seventy-five percent of the shifts available to him that year. The agreement also provided for holiday pay to those employees who worked the shifts immediately preceding and immediately subsequent to the holiday and who had been on the payroll for three consecutive months prior to the holiday. The agreement specifically stipulated that "any employee leaving the service of the company for any reason (except lay-off due to reduction of work force) before his annual determinative date shall not be entitled to a vacation or vacation pay in lieu thereof. * * *" Eagar left the company's employ one week before his annual determinative date to enter military service.[13] After

of "seniority, status, and pay." *See* Mentzel v. Diamond, 3rd Cir. 1948, 167 F.2d 299; MacLaughlin v. Union Switch & Signal Co., 3rd Cir. 1948, 166 F.2d 46. On the other hand, certain courts of appeals had ruled that vacation rights were "other benefits," which were governed by the employer's rules relating to employees on leave of absence or furlough. *See, e. g.*, Dwyer v. Crosby Co., 2d Cir. 1948, 167 F.2d 567; Siaskiewicz v. General Electric Co., 2d Cir. 1948, 166 F.2d 463; Foster v. General Motors Corp., 7th Cir. 1951, 191 F.2d 907; Brown v. Watt Car & Wheel Co., 6th Cir. 1950, 182 F.2d 570. In light of *Accardi* and *Magma Copper* a broader view of the statute has been taken. *See* Edwards v. Clinchfield Railroad Co., 6th Cir. 1969, 408 F.2d 5; Morton v. Gulf Mobile & Ohio Railroad Co., 8th Cir. 1969, 405 F.2d 415.

9. Petitioners in *Accardi* were veterans of World War II, and their rights in civilian employment were thus governed by Section 8 of the Selective Training and Service Act of 1940, 54 Stat. 890, as amended, 50 U.S.C.App. (1946 ed.) 308.

Section 8 of the 1940 Act was re-enacted as Section 9 of the Universal Military Training and Service Act, 62 Stat. 614, as amended, 50 U.S.C.App. § 459, the provision applicable here. The general history of the statute prior to re-enactment in the present code is outlined by Mr. Justice Goldberg in Tilton v. Missouri Pacific Railroad Co., 376 U.S. 169, 174, 84 S.Ct. 595, 599, 11 L.Ed.2d 590 (1964).

10. 341 F.2d 72.

11. 383 U.S. 225, 229–230, 86 S.Ct. 768, 771–772, 15 L.Ed.2d 717. The Supreme Court had previously expressed the same thought in Fishgold v. Sullivan Drydock & Repair Corp., 328 U.S. 275, 284–285, 66 S.Ct. 1105, 1110–1111, 90 L.Ed. 1230 (1946).

12. 383 U.S. 225, 232, 86 S.Ct. 768, 773, 15 L.Ed.2d 717.

13. Eagar was continuously employed by Magma Copper from March 12, 1958 until March 6, 1959, when he entered into military service. He returned to the company's employ on May 2, 1962.

satisfactorily completing his tour of duty, Eagar was reemployed by Magma Copper. Although he had worked seventy-five percent of the shifts for the year ending March 12, 1959 and had worked the shifts both before and after Memorial Day and Independence Day in 1962, the company refused his claims for vacation pay for those periods because (1) as to vacation pay, he was not in the service of the company at the end of the vacation earning year as required by the contract, and (2) as to holiday pay, he had not been on the company payroll for three consecutive months prior to either holiday. The Ninth Circuit[14] sustained the company's determination of the vacation pay and holiday pay, reasoning that vacation rights are not "seniority, status, and pay" but fall under the heading of "other benefits," with the consequence that returning veterans are entitled to them only where non-veterans on furlough or leave of absence would be entitled to them. In a per curiam opinion the Supreme Court reversed the Ninth Circuit on the authority of *Accardi.*

We regard *Magma Copper* as determinative of the case at bar. In 1964 both Hollman and Blakely had been in the employ of appellant for more than six months, and both had actual gross earnings during that year. It is therefore evident—indeed, it was stipulated—that appellees, like Eagar, were denied vacation pay for 1964 for the sole reason that they were not on appellant's active payroll at the end of the work year, an absence necessitated by service to their country. To approve the denial of vacation pay in these circumstances would be to reject the teachings of *Magma Copper* and the basic principle that "* * * he who is 'called to the colors is not to be penalized on his return by reason of his absence from his civilian job,' "[15] a step we chose not to take.

Pratt & Whitney argues that had appellees remained in the company's employ instead of entering military service, there is no assurance they would have received vacation pay for 1964, since they might have been absent on furlough or leave of absence on December 31, 1964, or they might have left the company's employ completely prior to that date. This argument will not stand the bright light of inspection. Under appellant's analysis, similar contingencies could have defeated the veteran's rights in *Magma Copper,* since an employee who, for any reason, left the company before his anniversary year date received no vacation pay for that year. The Supreme Court has made clear, however, that "In light of the purpose and history of this statute, * * * we cannot assume that Congress intended possibilities of this sort to defeat the veteran's seniority rights."[16]

Pratt & Whitney also asserts that *Dugger v. Missouri Pacific Railroad Company,* 276 F.Supp. 496 (S.D.Tex. 1957), affirmed 5th Cir. 1969, 403 F.2d 719, certiorari denied, 395 U.S. 907, 89 S.Ct. 1752, 23 L.Ed.2d 222 (1969), compels the conclusion that the district court committed error in awarding appellees vacation pay for 1964. We disagree. In *Dugger,* unlike the instant case, the company did not require employees to be on the active payroll at the end of the work year to be eligible for vacation pay. Dugger performed enough compensated service in 1963 to earn a paid vacation in 1964 and received the pay even though he entered the military service prior to the close of the 1963 work year. Thus the precise question before this Court was not at issue in *Dugger.* It is true that in *Dugger* the Court approved the result reached by the district court in its refusal to grant the employee vacation pay for 1964 and 1965, the years following induction in which the number of days of "compensated service" that the employee performed for the company numbered 0 to 85, respectively, and in which the em-

---

14. 380 F.2d 318.

15. Tilton v. Missouri Pacific Railroad Co., 376 U.S. 169, 170–171, 84 S.Ct. 595, 597, 11 L.Ed.2d 590 (1964) ; Fishgold v. Sullivan Corp., 328 U.S. 275, 284, 66 S.Ct. 1105, 1111, 90 L.Ed. 1230 (1946).

16. *See* Tilton v. Missouri Pacific Railroad Co., 376 U.S. 169, 180–181, 84 S.Ct. 595, 602, 11 L.Ed.2d 590 (1964).

ployee had received sixty days paid vacation from the Government.[17] We do not believe, however, that the Court's approval of that result is inconsistent with our determination in the instant case; appellant's reliance on *Dugger* is misplaced.

■ In these times of relatively high wages and steep income taxes, unions bargain vigorously for indirect compensation in the form of a host of diverse benefits.[18] Whether the benefits are elements of "seniority" or "other benefits," the veteran's stake in them must be protected if they would automatically accrue to him but for induction. Clearly, the exclusion of veterans from benefits that have come to be regarded as essential perquisites of employment is inconsistent with the Universal Military Training and Service Act. Accordingly, we affirm.

Affirmed.

## ON PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC

PER CURIAM:

The Petition for Rehearing is denied and no member of this panel nor Judge in regular active service on the Court having requested that the Court be polled on rehearing en banc, (Rule 35 Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 12) the Petition for Rehearing En Banc is denied.

17. Dugger was entitled to thirty days paid vacation each year he was in the service. 10 U.S.C. § 701. The effect of granting his claim, then, would have been to award him double vacation pay for the time he spent in military service: He would have received not only sixty days paid vacation from the Government but also two years of vacation pay from his private employer. Double pay clearly would not have accrued to Dugger had he remained in private employment, a notable distinction between *Dugger* and the case at bar.

18. These diverse benefits include pensions and retirement plans [Retail Clerks Union, No. 1550 v. N.L.R.B., 1964, 117 U.S.App.D.C. 191, 330 F.2d 210, certiorari denied, 379 U.S. 828, 85 S.Ct. 41, 13 L.Ed.2d 31 (1964); Inland Steel Co.

v. N.L.R.B., 7th Cir. 1948, 170 F.2d 247, certiorari denied, 336 U.S. 960, 69 S.Ct. 887, 93 L.Ed. 1112 (1949)]; profit sharing [N.L.R.B. v. Black-Clawson Co., 6th Cir. 1954, 210 F.2d 523]; bonuses [N.L.R.B. v. Citizens Hotel Co., 5th Cir. 1964, 326 F.2d 501]; merit pay [N.L.R.B. v. United Brass Works, Inc., 4th Cir. 1961, 287 F.2d 689]; company-furnished housing [N.L.R.B. v. Bemis Bros. Bag Co., 5th Cir. 1953, 206 F.2d 33]; stock purchase plans [Richfield Oil Corp. v. N.L.R.B., D.C.Cir.1956, 231 F.2d 717, certiorari denied 351 U.S. 909, 76 S.Ct. 695, 100 L.Ed. 1444 (1956)]; vacations [N.L.R.B. v. Century Cement Mfg. Co., 2d Cir. 1953, 208 F.2d 84]; and group health insurance [W. W. Cross & Co. v. N.L.R.B., 1st Cir. 1949, 174 F.2d 875].