Frank E. CONNETT, Samuel A. Eblin, Wayne M. Watkins, Plaintiffs,

v.

AUTOMATIC ELECTRIC COMPANY, Defendant.

Nos. 70 C 1985, 70 C 1986 and 70 C 1987.

United States District Court, N. D. Illinois, E. D.

March 15, 1971.

Gilbert A. Cornfield, Kleiman, Cornfield & Feldman, Chicago, Ill., for plaintiffs.

Seyfarth, Shaw, Fairweather & Geraldson, Chicago, Ill., for defendant.

## MEMORANDUM OPINION

WILL, District Judge.

The plaintiffs in these consolidated cases are each suing their employer, Automatic Electric Company, under Section 9 of the Universal Military Training and Service Act, 50 U.S.C. App. § 459 (hereinafter referred to as the "Act"), claiming that they are entitled to certain vacation benefits under their collective bargaining agreement which would have accrued to them but for the temporary termination of their employment for active duty in the armed services of the United States. The issue presented to this Court for resolution is whether vacation benefits are a perquisite of "seniority" as that term is used in Section 9 of the Act, which must be granted an employee upon his return from military service. The facts are largely stipulated and each side has moved for summary judgment. For the reasons stated below, we grant defendant's motion for summary judgment and deny plaintiffs' motion for same.

The work history of the three plaintiffs can be summarized as follows:

| | Date of Hire | Date Left Work to Enter Service | Date Re-employed | Approximate time of Non-employment |
|---|---|---|---|---|
| Connett | 6/8/64 | 6/14/68 | 5/26/70 | 1 yr., 11½ mos. |
| Eblin | 6/12/67 | 4/19/68 | 4/20/70 | 2 yrs. |
| Watkins | 11/30/64 | 2/16/68 | 3/18/70 | 2 yrs., 2 mos. |

The controlling collective bargaining agreement states that for an employee to be entitled to vacation benefits during a year, he must have at least one year seniority and have been on the payroll on December 31st of the preceding year. The one year requirement is not here involved since all three plaintiffs have more than one year's seniority. Also not at issue herein is the *amount* of vacation to which these plaintiffs are currently entitled based upon their seniority. For this purpose, the defendant computes their seniority as if they had never left its employ for military service.

The sole issue here is whether or not the plaintiffs are entitled to full vacation pay for the years 1969 and 1970. The employer claims that they are not entitled to such benefits because they were not on the payroll on December 31, 1968, and December 31, 1969. The plaintiffs did receive full vacation benefits in the year 1968, which accrued to them by being on the payroll on December 31, 1967, even though each only worked part of 1968. And they will be entitled to vacation benefits in 1971 because of being in defendant's employ on December 31, 1970, although they worked less than a full year in 1970. Thus, the plaintiffs have only been deprived of vacation benefits for two calendar years, which corresponds to the approximately two years that each did not work for defendant because of his military obligations.

Plaintiffs' claim to vacation benefits for 1969 and 1970 is said to arise under Section 9 of the Act. Section 9(b) (B) (i) of the Act provides that reemployed veterans must be restored by their employer to "a position of like seniority, status, and pay" to that which they had prior to their induction. Section 9(c) (1) of the Act provides that reemployed veterans

> "shall be considered as having been on furlough or leave of absence during his period of training and service in the armed forces, shall be so restored without loss of seniority, shall be entitled to participate in insurance or other benefits offered by the employer pursuant to established rules and practices relating to employees on furlough or leave of absence in effect with the employer at the time such person was inducted into such forces * * *."

Section 9(b) (B) (i) thus deals with rights that relate to seniority and Section 9(c) (1) deals with "other benefits." As to "other benefits", a reemployed veteran is entitled under the wording of the statute solely to those benefits that are provided to employees who are on leave or furlough for non-military reasons. Because the defendant does not provide vacation benefits to employees on non-military leave or furlough from employment, the plaintiffs are not entitled to vacation under 9(c) (1)'s provisions for "other benefits." Recognizing this, the plaintiffs argue that the defendant's denial of their vacation benefits for 1969 and 1970 has caused them to incur a "loss of seniority."

Prior to 1966, the lower federal courts compartmentalized the "seniority" benefits protected by § 9(b) (B) (i) from the "other benefits" protected by § 9(c), with vacation benefits considered to be "other benefits." See, e. g., Siaskiewicz v. General Electric Company, 166 F.2d 463 (2d Cir. 1948); Brown v. Watt Car and Wheel Company, 182 F.2d 570 (6th Cir. 1950); cert. denied, 340 U.S. 875, 71 S.Ct. 121, 95 L.Ed. 636 (1950); Alvado v. General Motors Corp., 229 F.2d 408 (2d Cir. 1956), cert. denied, 351 U.S. 983, 76 S.Ct. 1050, 100 L.Ed. 1497 (1956); Foster v. General Motors Corp., 191 F.2d 907 (7th Cir. 1951); Seattle Star, Inc. v. Randolph, 168 F.2d 274 (9th Cir. 1948); Monticue v. Baltimore & O. R. R. Co., 91 F.Supp. 561 (N. D.Ohio 1950). In 1966, however, the United States Supreme Court, in Accardi v. Pennsylvania Railroad Co., 383 U.S. 225, 86 S.Ct. 768, 15 L.Ed.2d 717 (1966), blurred this compartmentalization which it had never directly endorsed.

*Accardi* involved a dispute as to the amount of severance pay due to a group of reemployed veterans. Under the terms of an agreement between their employer and their union, the amount of severance pay was based upon the length of an employee's "compensated service." A month of "compensated service" was defined as one in which the employee worked at least one day, and a year of "compensated service" as one in which he had worked at least seven months. The employer did not include the time spent by veterans in the armed forces in determining the length of their "compensated service" on the ground that the amount of severance pay was based on the total actual service rendered by an employee, rather than just his "seniority."

The Supreme Court disagreed:

"The term 'seniority' is not to be limited by a narrow, technical definition but must be given a meaning that is consonant with the intention of Congress as expressed in the 1940 Act. That intention was to preserve for returning veterans the rights and benefits which would have *automatically accrued* to them had they remained in private employment rather than responding to the call of their country." 383 U.S. at 229–230, 86 S.Ct. at 771 (emphasis added)

Applying this conception of seniority to the benefit in dispute, the Court found that since seniority is a means of allocating priority to future work opportunities and since the severance payments were compensation for the loss of such opportunities, they were really a part of an employee's seniority rights: "The amount of these allowances is just as much a perquisite of seniority as the more traditional benefits such as work preference and order of lay-off and recall." 383 U.S. at 230, 86 S.Ct. at 772. According to the Court, the purpose of the "other benefits" clause was to give veterans additional protections rather than to take away benefits conferred by other provisions of the Act. Accordingly, *Accardi* has been interpreted as suggesting that the standard for determining what is encompassed by the term "seniority" is independent of the other provisions of the Act. NOTE, "Reemployment Rights for Veterans," 80 Harv. L.Rev. 142, 148 (1966).

*Accardi* is relevant to the instant litigation because of its broad and generous interpretation of the "perquisites of seniority" which are protected by § 9(b) (B) (i) of the Act. It is not, however, a precedent for this case because we are not faced with an analogous situation. If the defendant refused to include the time spent by the plaintiffs in the armed services in determining the *amount* of vacation benefits to which they are currently entitled, *Accardi* would be applicable. The defendant, however, does so

compute the current vacation benefits for returned veterans. As noted above, the sole issue here is whether these plaintiffs are entitled to full vacation pay for the years 1969 and 1970.

The Supreme Court has handed down only one further decision which relates to the issue of "seniority" benefits. In Eagar v. Magma Copper Co., 389 U.S. 323, 88 S.Ct. 503, 19 L.Ed.2d 557 (1967), the Court in a five-three per curiam decision reversed the decision of the Court of Appeals for the Ninth Circuit denying vacation benefits to several reemployed veterans. Magma Copper Co. v. Eager, 380 F.2d 318 (9th Cir. 1967). Because the Supreme Court's ruling was without opinion and cited only *Accardi*, it is difficult to determine the precise scope of the Court's ruling.

The plaintiffs in *Eagar* worked under a contract which provided vacation benefits to an employee who (1) had worked for at least one year since his last vacation earning year and (2) had worked at least 75% of his available shifts. The plaintiff Eagar, who was deemed representative of the plaintiffs, had worked more than the required number of shifts but was inducted into military service six days prior to the end of his vacation earning year. The employer refused to grant vacation benefits to him because he was not in its service at the end of his vacation earning year as required by the contract. The Court of Appeals, in a pre-*Accardi* opinion, denied the plaintiffs the benefits they requested on the grounds that vacation pay was not a perquisite of seniority under § 9(b) (B) (i) of the Act, but was "other benefits" under § 9(c) (1) to which they were not entitled because the defendant provided no such benefits to other employees who did not satisfy the contract requirements because of non-military leaves of absence. On a petition for rehearing following the Supreme Court's ruling in *Accardi*, the Court of Appeals, Judge Madden dissenting, concluded that *Accardi* did not cover the type of claim before it and denied the petition. As previously noted, the Su-

preme Court reversed this decision without opinion, citing only *Accardi.*

Both parties offer varying interpretations of *Eagar.* The defendant suggests that *Eagar* is a statement that *Accardi's* "automatic accrual rule" operates only where the minimum work requirement is satisfied and is not a holding that vacation benefits always automatically accrue on the basis of seniority alone or that all vacation eligibility requirements are automatically satisfied by seniority. The plaintiffs in effect argue that *Eagar* represents a conclusion that, if the rights and benefits claimed by the employees would have automatically accrued to them had they remained in their civilian jobs instead of entering military service, then they must be granted those benefits upon their return for the period of time they were gone.

We believe that the import of the Supreme Court's decision in *Eagar* is manifest. The Court was there faced with an employee who had worked almost an entire year and who was denied vacation benefits only because his military service began a few days prior to his anniversary date. The Court's action clearly indicated its belief that § 9 of the Act requires that an employee who already has substantially earned his vacation except for a very minor deviation from the contract requirement directly attributable to his military service not be penalized.

The construction placed on *Eagar* by the plaintiffs is untenable. If *Eagar* truly represents a conclusion by the Supreme Court that § 9 of the Act grants to returning veterans everything to which they would have been entitled had they remained on their civilian job, they would be entitled not only to bulk annual vacation pay but, presumably, also to pay for single vacation days granted by the employer (such as Labor or Memorial Day) even though they did not work at any point in time near those holidays or for even one day during the year. This construction logically would require the employer even to pay the returning vet-

eran such wages for the period of his military service as would have automatically accrued to him had he remained on the job instead of entering the armed forces. We cannot believe that this was the intent of Congress when it passed the Universal Military and Training Service Act and we do not believe that the Supreme Court has so held.

The plaintiffs attempt to avoid this conclusion by noting that the employee in *Eagar* had a twofold contractual requirement for vacation pay, a minimum work requirement and a single day work requirement, whereas here the plaintiffs only had to work on one specific day (December 31 of the preceding year) and had no minimum work requirement. And, the plaintiffs further contend, the requirement not satisfied in *Eagar* was the same one not satisfied here, i. e., the single day work requirement. Thus, the argument goes, *Eagar* is clear precedent for granting the plaintiffs the contested vacation pay.

■ It is sufficient for us merely to note in response to this argument that *Eagar* involved circumstances where the employee, notwithstanding his six day failure to comply with the technicality of the single date requirement, had otherwise earned his vacation. Eagar did not sue, as do the plaintiffs in the present case, for vacation pay for the years that he was absent in the military service, but only for the year in which he had substantially earned it. In the instant case, the plaintiffs' failure to satisfy their single day work requirement reflects as well their absence from work for approximately the entire length of time for which they are presently seeking vacation benefits. Because we cannot believe that Congress or the Supreme Court ever intended returning veterans to receive vacation pay for periods of time in which they performed no work, we conclude that, irrespective of whether the right to vacation benefits is categorized as a "perquisite of seniority" or an "other benefit," the defendant is not obligated by § 9 of the Act, *Accardi,* or *Eagar* to grant vacation benefits for 1969 and

1970 to the plaintiffs, returning veterans who have neither met the single day work requirement for the two years involved nor worked at all for approximately that length of time.

Two recent Courts of Appeals decisions reflect the current state of uncertainty of the precise status of vacation benefits vis-a-vis "perquisites of seniority." Nevertheless, these two cases, Hollman v. Pratt & Whitney Aircraft, 435 F. 2d 983 (5th Cir. 1970), and Kasmeier v. Chicago, Rock Island and Pacific R. R. Co., 437 F.2d 151 (10th Cir. 1971) support our disposition of the instant litigation.

In *Hollman,* the Fifth Circuit, in granting the employee the disputed vacation benefits, followed the apparent spirit of *Accardi* and *Eagar* and refused to compartmentalize "seniority" benefits from "other benefits" and to bottle the vacation benefits involved into one compartment or another. The employee involved had worked in 1964 until December 4, at which time he was inducted into the armed services. He did not return to the defendant's employ until November 29, 1966. Under the terms of the controlling contract, the plaintiff, to be eligible for vacation benefits in 1965, had to work six months in the vacation earning year (1964) and be on the payroll on December 31, 1964 (or if in the military, must have returned to work by December 31, 1965). The employee had worked more than six months in the vacation earning year, 1964, but missed fulfilling the second requirement by several weeks because of his induction and his inability to return in 1965. Because this case was almost factually identical to *Eagar,* the Court affirmed the district court's grant to the employee of vacation benefits that truly had accrued to him in 1964 by his working for almost the entire year, notwithstanding the relatively minor deviation from the contract terms directly attributable to his military service.

The Tenth Circuit in *Kasmeier* took an approach more akin to that taken in the pre-*Accardi* cases in that the Court continued to perceive a viable distinction between "seniority" and "other benefits." In that case, the contractual requirement for vacation benefits was 110 days of compensated service in the prior calendar year. The plaintiff had been employed by the defendant from 1961 through 1963, when he left to enter the armed forces. He returned to the defendant's employ after his discharge on September 13, 1967, and rendered only fifty-three days of compensated service during 1967. In his suit for vacation benefits to be received in 1968, the Court concluded that the plaintiff had not been denied a perquisite of seniority and denied his claim for relief. The Court noted that, although it was going beyond *Hollman* in making the categorization of vacation benefits, the difference in results between the two cases was created by the variant facts between the two, not an inconsistent rationale. The plaintiff in *Hollman,* the Court noted, would have likewise succeeded under its *Kasmeier* decision because the plaintiff in *Hollman,* unlike the plaintiff in *Kasmeier,* had substantially earned his vacation notwithstanding the intervention of military service. Thus, the test in both of these cases appears to be whether the plaintiff has substantially earned his vacation; if he has, a minor deviation directly attributable to his military obligations will be deemed immaterial and the benefits will be awarded.

The plaintiffs herein, in opposing the defendant's motion for summary judgment, have belatedly urged, in a supplementary brief, that a material factual issue exists which precludes granting the motion. This issue allegedly is the nature of the consideration for the vacation benefits under the terms of the parties' collective bargaining agreements, i. e., the December 31st payroll requirement. The plaintiffs argue extensively that this consideration is the length of an employee's service with the defendant as opposed to a minimum work requirement which the defendant, they claim, has long sought to impose in collective bar-

gaining negotiations but which has been successfully resisted by the plaintiffs' union. The plaintiffs again note that the decisions such as *Eagar, Hollman* and *Kasmeier* can be distinguished from the present because the controlling contract in each of those cases had a minimum work requirement and relief was granted or not on the basis of whether or not the minimum work requirement had been met. Because the instant contract has no minimum work requirement, the argument runs, we should only determine if the benefits would have "automatically accrued" and, if they would, we would be obligated to grant the plaintiffs' motion for summary judgment and deny the defendant's motion for same. The defendant, not surprisingly, argues to the contrary that the December 31st payroll requirement is "truly" a minimum work requirement, albeit a crude one.

This type of semantic simplicity by both plaintiffs and defendant is dangerous and premised upon an erroneous assumption. Certainly, the intent of Congress cannot be determined on the basis of the language utilized by or the intrinsic guiding intent of negotiators in collective bargaining sessions. The most that can be said for the plaintiffs' argument that the omission of a minimum work requirement for vacation benefits was purposeful is that the plaintiffs' union has been successful in limiting the requisites for accruing vacation benefits. However, the plaintiffs herein have not substantially, or otherwise, earned their vacation benefits even under the limited eligibility requirements and are now attempting to nullify even this requirement. Until the Supreme Court or our Court of Appeals informs us to the contrary, we cannot believe that Congress intended returning veterans to receive vacation pay for periods of time in which they did not work a single day, and for which periods they likewise failed to meet the contractual standard of eligibility.

The plaintiffs' assumption that we must deny summary judgment for the defendant until we determine the nature of the consideration for the vacation benefits is erroneous also because this conclusion is based upon the misguided premise that *Accardi* compels a decision in favor of the veteran if the nature of the consideration was the length of an employee's service to the Company and not compensated work. Because plaintiffs have again made this argument in their supplemental brief, we again repeat that *Accardi* compels no such conclusion.

*Accardi* dealt with a factual situation wherein the employer refused to compute in its determination of severance pay the amount of time the veteran had spent in the armed forces in prior years. In the instant case, the defendant does include the amount of time the veteran was in the armed forces in its computation of the amount of vacation benefits to which he is currently entitled. *Accardi* did not hold that the involved employees were entitled to severance pay, but only that the computation thereof must include any prior military absences. The gist of the plaintiffs' argument is that any benefit that would have automatically accrued to a veteran had he stayed on his civilian job should be given to him upon his return. If this conception were adopted, any returning veteran would be entitled not only to annual vacation benefits for the years in which he was in the armed forces but also to regular pay by the employer for that period of time, as well as compensation for single paid vacation days, Christmas bonuses, and anything else the employer paid to employees during his absence. Plaintiffs seek to push the rationale of *Accardi* and *Eagar* to illogical extremes. Defendant's motion for summary judgment is granted. An appropriate order will enter.