UNITED STATES of America ex rel. Donald S. AIELLO, Plaintiff,

v.

DETROIT FREE PRESS, INCORPORATED, Defendant.

UNITED STATES of America ex rel. Carl L. BRISCOE, Plaintiff,

v.

DETROIT FREE PRESS, INCORPORATED, Defendant.

Civ. A. Nos. 40150, 40152.

United States District Court, E. D. Michigan, S. D.

Sept. 16, 1974.

**1402**

Ralph B. Guy, Jr., U. S. Atty., Gwenn L. Carr, Asst. U. S. Atty., Detroit, Mich., for plaintiffs.

Kenneth Murray, Brownson Murray, Detroit, Mich., for defendant.

## OPINION AND ORDER

GUBOW, District Judge.

Plaintiffs Donald S. Aiello and Carl L. Briscoe each filed suit against defendant Detroit Free Press under the Universal Military Training and Service Act, 50 U.S.C. App. § 459. They are each veterans who, after discharge from the military service, were reinstated as employees of Defendant. By their complaints, each seeks vacation pay for the year of their return and in the following year. On stipulation of the parties, the cases were ordered consolidated. The matter is now before the court, on stipulated facts, upon cross-motions for summary judgment.

The facts are as follows:

Plaintiff Donald S. Aiello was initially employed by the defendant on March 20, 1965. He worked until February 3, 1967 when he was given leave by the defendant to enter the Armed Forces. On February 14, 1967, he entered military service. After satisfactory completion of service, plaintiff was reinstated in the employment of defendant on May 10, 1971. In 1971, plaintiff received no paid vacation from defendant. In 1972, he received fourteen days of paid vacation based upon the time he was on the defendant's payroll in 1971.

Plaintiff Carl L. Briscoe was originally employed by defendant on March 8, 1969 and worked until April 22, 1970 when he was given leave by defendant to enter the Armed Forces. He entered military service on April 30, 1970. After satisfactory completion of service, plaintiff was reinstated in the employment of defendant on November 29, 1971. Prior to his entry into the military, plaintiff received three days accrued vacation pay based upon the period of time he was on the payroll in 1970. In 1972, plaintiff received one day of paid vacation based upon the twenty-one days plaintiff was on the defendant's payroll in 1971.

Eligibility for vacation benefits is governed by Article IV of the applicable Collective Bargaining Agreement.[1] In determining the amount of vacation pay to which each plaintiff was entitled, defendant applied the provisions of section 6 of Article IV, governing vacation credit for employees on leave of absence. In calculating the accrued vacation paid to plaintiffs under section 6, defendant treated them as having been continuously employed from the dates of their original employment. Plaintiff Aiello was thus paid a pro-rata share of four weeks, the period to which employees with continuous service of five years or more were entitled under the agreement, and plaintiff Briscoe was paid a pro-rata share of two weeks, based on continuous service of one year but less than three years. For plaintiff Aiello, this formula resulted in no vacation pay in 1971 and fourteen days in 1972 based upon the time he had worked in 1971. For plaintiff Briscoe, it resulted in one day of vacation pay in 1972 based on the time he had worked in 1971.

Both plaintiffs contend that the defendant violated the Universal Military Training and Service Act when it applied section 6 of the Agreement to them. They maintain that the proper provision of the Agreement for application in their cases is section 1, Article IV, which applies to employees in the continuous service of the defendant.

At issue is the proper construction of section 9 of the Universal Military Training & Service Act, 50 U.S.C. App. § 459.[2] Specifically, the question here

---

1. *Article IV.* "Vacations shall be on the basis of eligibility as follows:
*Section 1.* Regular full-time employees who have completed the following periods of continuous service by December 31 of the preceding calendar year shall be entitled to vacations as follows:

| Period of service | Vacation |
| --- | --- |
| 1 year but less than 3 years | 2 weeks |
| 3 years but less than 5 years | 3 weeks |
| 5 years or more | 4 weeks |

*Section 2.* Regular full-time employees who will have completed less than one (1) year of continuous service by December 31 of the preceding calendar year, and part-time, temporary or extra employees shall accumulate vacation credits in the preceding calendar year to be liquidated in the following calendar year as follows:

| Period Worked | Vacation |
| --- | --- |
| 208 hours straight time | 1 day |

"Thereafter, one (1) day for each subsequent two hundred eight (208) straight-time hours or major fraction worked.
Employees who have not been full-time workers during their employment period, but who have been available at all times for work can accumulate credits for a three (3)-week vacation in the following manner: Each year represents 2,080 straight-time hours. When these employees have worked 6,240 straight-time hours, they will be eligible for a three (3)-week vacation.
\*　\*　\*　\*　\*

*Section 6.* A regular employee on leave of absence shall only accumulate vacation credits on a pro-rata basis for the time actually worked during the year or years in which the leave is taken."

2. In pertinent part, this section provides as follows:
"§ 459. Separation from service
(a) Certificate recording proficiency and merit; physical examination
Any person inducted into the armed forces under this title [sections 451, 453, 454, 455, 456 and 458–471 of this Appendix] for training and service, who, in the judgment of those in authority over him, satisfactorily completes his period of training and service under section 4(b) [section 454(b) of this Appendix] shall be entitled to a certificate to that effect upon the completion of such period of training and service, which shall include a record of any special proficiency or merit attained. In addition, each such person who is inducted into the armed forces under this title [said sections] for training and service shall be given a physical examination at the beginning of such training and service, and upon the completion of his period of training and service under this title [said sections], each such person shall be given another physical examination and, upon his written request, shall be given a statement of physical condition by the Secretary concerned: *Provided,* That such statement shall not contain any reference to mental or other conditions which in the judgment of the Secretary concerned would prove injurious to the physical or mental health of the person to whom it pertains:

is whether the disputed vacation benefits fall within the concept of "seniority" or within the concept of "other benefits", as those terms are used in section 9 of the Act. If the vacation benefits fall within the concept of "seniority", then Plaintiffs were entitled, under section 9(b)(B)(i) of the Act, 50 U.S.C. App. § 459(b)(B)(i), to have those benefits restored to them upon their return to civilian employment. If, on the other hand, the vacation benefits are properly construed as "other benefits", then under section 9(c)(1) of the Act, 50 U.S.C. App. § 459(c)(1), plaintiffs are entitled to those benefits only to the extent that employees returning from a leave of absence would be. In the latter case, defendant's application of section 6, Article IV, of the bargaining agreement would be proper.

The Act itself does not define "seniority". However, the Act has been the subject of a considerable body of case law shedding some light on the meaning of "seniority". The leading case is *Accardi v. Pennsylvania R. Co.*, 383 U.S. 225, 86 S.Ct. 768, 15 L.Ed.2d 717 (1966). In that case, a tugboat fireman asserted that what is now section 9 of the Act[3] entitled him to have the time spent by him in the Armed Forces included in the calculation of his severance allowance which, under the applicable bargaining agreement, increased in proportion to the length of time an employee had rendered "compensated service". The District Court found in favor of the employee. The Second Circuit Court of Appeals reversed, finding that the employee's service time should not be included in computing the severance

---

*Provided further,* That, if upon completion of training and service under this title [said sections], such person continues on active duty without an interruption of more than seventy-two hours as a member of the Armed Forces of the United States, a physical examination upon completion of such training and service shall not be required unless it is requested by such person, or the medical authorities of the Armed Force concerned determine that the physical examination is warranted.

(b) Reemployment rights

In the case of any such person who, in order to perform such training and service, has left or leaves a position (other than a temporary position) in the employ of any employer and who (1) receives such certificate, and (2) makes application for reemployment within ninety days after he is relieved from such training and service or from hospitalization continuing after discharge for a period of not more than one year— . . .

(B) if such position was in the employ of a private employer, such person shall—

(i) if still qualified to perform the duties of such position, be restored by such employer or his "successor in interest to such position or to a position of like seniority, status, and pay; . . . unless the employer's circumstances have so changed as to make it impossible or unreasonable to do so; . . .

(c) Service considered as furlough or leave of absence

(1) Any person who is restored to a position in accordance with the provisions of paragraph (A) or (B) of subsection (b) [of this section] shall be considered as having been on furlough or leave of absence during his period of training and service in the armed forces, shall be so restored without loss of seniority, shall be entitled to participate in insurance or other benefits offered by the employer pursuant to established rules and practices relating to employees on furlough or leave of absence in effect with the employer at the time such person was inducted into such forces, and shall not be discharged from such position without cause within one year after such restoration.

(2) It is declared to be the sense of the Congress that any person who is restored to a position in accordance with the provisions of paragraph (A) or (B) of subsection (b) [of this section] should be so restored in such manner as to give him such status in his employment as he would have enjoyed if he had continued in such employment continuously from the time of his entering the armed forces until the time of his restoration to such employment.

(3) Any person who holds a position described in paragraph (A) or (B) of subsection (b) [of this section] shall not be denied retention in employment or any promotion or other incident or advantage of employment because of any obligation as a member of a reserve component of the Armed Forces of the United States. . . . "

3. The rights asserted in *Accardi* were governed by Section 8 of the Selective Training and Service Act of 1940, 54 Stat. 890, as amended, 50 U.S.C. App. (1946 ed.) § 308.

allowance because the allowance did not come within the concepts of "seniority, status, and pay", for purposes of the Act. The Supreme Court reversed, holding that Congress intended the Act ". . . to preserve for the returning veterans the rights and benefits which would have automatically accrued to them had they remained in private employment rather than responding to the call of their country." 383 U.S. at 229–230, 86 S.Ct. at 771. The Court rejected the contention that the benefits involved were governed by what is now section 9(c)(1) of the Act, 50 U.S.C. App. § 459(c)(1), holding that the "insurance and other benefits" clause was ". . . intended to add certain protections to the veteran and not to take away those which are granted him by [section 9(b)(B)]." 383 U.S. at 232, 86 S.Ct. at 773.

The subsequent case of *Eagar v. Magma Copper,* 389 U.S. 323, 88 S.Ct. 503, 19 L.Ed.2d 557 (1967), dealt with the problem of vacation benefits under the Act. In that case, the employee, Eagar, began working for Magma Copper on March 12, 1958 and left to enter the military nearly one year later, on March 6, 1959. After his reinstatement on May 2, 1962, he sought vacation pay for 1959 and holiday pay for Memorial Day and the Fourth of July of 1963. With respect to eligibility for vacation pay, the applicable collective bargaining agreement required that the employee be continuously employed by the company for at least one year immediately preceding the date of his application for vacation pay. It further required that the employee must have worked 75% of the available work shifts during that year. *Magma Copper Co., San Manuel Division v. Eagar,* 9 Cir., 380 F.2d 318, 319–320. Eagar had satisfied the 75% requirement, but had not been continuously employed for a full year prior to his application for vacation.

Noting that vacation rights were based on work actually done, the Ninth Circuit Court of Appeals concluded that *cardi* and *Eagar,* vacation pay is *per se* those rights "are not merely a perquisite of seniority, [so] they must fall under the heading of 'other benefits'". 380 F.2d at 321. It therefore held that Eagar should be treated like a non-veteran employee on furlough or leave of absence. The Supreme Court summarily reversed the Ninth Circuit in a per curiam order which only cited the *Accardi* case and did not otherwise set forth the basis for the decision.

These Supreme Court pronouncements have failed to result in a consistent approach among the Circuits to the problems of vacation pay under the Act. Some courts have taken the position, in effect, that under the "teachings" of *Ac-* a perquisite of seniority rights. *Morton v. Gulf, Mobile and Ohio Railroad Company,* 405 F.2d 415 (8th Cir. 1969); *Locaynia v. American Airlines, Inc.,* 457 F.2d 1253 (9th Cir. 1972). Most of the cases, however, have looked to the particular bargaining agreements for a determination of the nature of vacation rights. Two such cases have held, under particular contracts, that vacation rights are not perquisites of seniority. *Dugger v. Missouri Pacific Railroad Company,* 276 F.Supp. 496 (S.D.Tex.1967), decided before *Eagar* but affirmed after *Eagar,* 403 F.2d 719 (5th Cir. 1968), cert. denied 395 U.S. 907, 89 S.Ct. 1752, 23 L.Ed.2d 222; *Kasmeier v. Chicago Rock Island and Pacific Railroad Co.,* 437 F.2d 151 (10th Cir. 1971). The applicable contracts in both cases conditioned an employee's vacation rights to his rendering a given number of days of "compensated service". This fact was seen as the basis for distinguishing other cases in which vacation rights accrued automatically with the passage of time and therefore had to be considered as perquisites of seniority. "We continue to perceive a significant distinction between those cases in which benefits would automatically accumulate with the passage of time . . . and those cases in which more than a duration of time is required to collect the rights

. . . ." *Kasmeier v. Chicago Rock Island and Pacific Railroad Co., supra* at p. 156. Under this view, vacation rights should be treated as "other benefits" when "more than a duration of time is required to collect the rights."

In two other cases, courts have held, under particular bargaining agreements, that vacation rights are perquisites of seniority. *Ewert v. Wrought Washer Mfg. Co.,* 477 F.2d 128 (7th Cir. 1973); *Hollman v. Pratt and Whitney Aircraft,* 435 F.2d 983 (5th Cir. 1970). In *Hollman,* vacation rights were conditioned on three requirements. Two related to minimum periods of active employment and gross earnings during the eligibility year. These had been satisfied by the employees. The third required the employees to be on the active payroll on a given date. This requirement had not been satisfied because the employees were in the service on the given date. The court found *Eagar* to control and held that the employer's denial of benefits was a violation of the Act. The court expressly rejected the defendant's argument that "an employer who denies a returning veteran vacation pay has not infringed upon his rights so long as he has treated the veteran precisely the same as he would have treated an employee on furlough or leave of absence for the same period of time that the returning veteran was in the service." 435 F.2d at p. 986. Such a contention was, in the court's view, "barricaded" by the Supreme Court decisions in *Accardi* and *Eagar, Id.* The court treated the *Dugger* case (which arose in the same circuit) as factually distinguishable and therefore not inconsistent with the *Hollman* result.

■ It seems doubtful that the Supreme Court intended, by its rulings in *Accardi* and *Eagar,* that vacation rights be treated *per se* as perquisites of seniority under the Act. The Court in *Accardi* stated that "[t]he term 'seniority' . . . derives its content from private employment practices and agreements." 383 U.S. at 229, 86 S.Ct. at

771. It follows that vacation rights may or may not be perquisites of seniority depending entirely on how those rights are fashioned by the applicable bargaining agreement. Such agreements vary widely from one case to another. It would not be beyond the proper function of a collective bargaining agreement to define and limit vacation benefits in such a way as to place them outside the concept of "seniority". In the opinion of this court, disposition of each case must turn on an analysis of the applicable bargaining agreement.

■ The agreement in this case compels the conclusion that vacation benefits for these plaintiffs are "perquisites of seniority". Section 1 of Article IV, which applies to employees with more than one year of continuous service, establishes no work requirement as a condition to vacation entitlement. In the language of the *Kasmeier* court, these vacation rights are "benefits [which] would automatically accumulate with the passage of time." 437 F.2d at 156. There is no requirement of continuous employment for a full year or for work on a minimum number of work shifts, as in *Eagar.* There is no requirement for a minimum amount of "compensated service" as in *Dugger* and *Kasmeier.* There is no minimum gross earnings requirement, and employees are not required to be on the active payroll on a given date, as in *Hollman.* All that is required under Article IV, section 1, is that the employee be in the "continuous service" of the Defendant during the preceding year.

As a matter of law, plaintiffs here were in the "continuous service" of the defendant during the years at issue, and therefore qualified for the benefits described in section 1. This is clear from section 9(c)(2) of the Act, which provides as follows:

(2) It is declared to be the sense of the Congress that any person who is restored to a position in accordance with the provisions of paragraph (A) or (B) of subsection (b) [of this sec-

tion] should be so restored in such manner as to give him such status in his employment as he would have enjoyed if he had *continued in such employment continuously* from the time of his entering the armed forces until the time of his restoration to such employment. (emphasis added)

Aside from the mandate of the Act, defendant admitted in its Answers to both complaints, at paragraph V, that each "plaintiff was credited with continuous service for purposes of Article IV, Section 1" beginning with the date each was first employed.

■ Clearly, plaintiffs have qualified under section 1, Article IV, for the benefits there described. Defendant insists, however, that the bargaining agreement establishes a "work requirement" which removes vacation benefits from the concept of seniority. It is noted that the Agreement does establish something of a "work requirement" in section 2, Article IV, which applies to employees with less than one year of continuous service. Vacation benefits under this section are provided in direct proportion to straight-time hours of work performed. However, section 2 is not even arguably applicable to these plaintiffs since each of them, by defendant's admission, has more than one year of continuous service. The fact that this straight-time provision applies only to employees with less than one year on the job strongly suggests that the benefits described in section 1, which contains no work requirement, must be regarded as perquisites of seniority.

■ Section 6, Article IV, which applies to employees on leave of absence, also establishes a work requirement, and it is this work requirement which defendant relied upon in determining plaintiffs' vacation rights. Defendant thus seeks to treat plaintiffs, during the period they were in the Armed Forces, in the same way it would have treated an employee on leave of absence rather than as one having been in the defendant's continuous service. This is the same approach which the Fifth Circuit described as being "barricaded" by *Accardi* and *Eagar. Hollman v. Pratt and Whitney Aircraft, supra* at p. 986. Neither *Kasmeier* nor *Dugger* (both strongly relied on by defendant) sanctions the application to returning veterans of a leave-of-absence provision containing stricter work requirements than would apply to employees in continuous service. Indeed, that course would frustrate the intent of Congress in enacting section 9(c)(1) of the Act. *Accardi* instructs us that the provision of the Act allowing a returning veteran to be treated as having been on furlough or leave of absence was "intended to add certain protections to the veteran and not to take away those which are granted him by [section 9(b)(B)]." 383 U.S. at 232, 86 S.Ct. at 773. The opposite result would be achieved here if the Defendant were allowed to apply section 6, Article IV, of the Agreement.

This court concludes that the vacation rights set forth in section 1, Article IV, of the bargaining agreement are perquisites of seniority which Defendant, in applying section 6, Article IV, improperly denied to plaintiffs. Plaintiffs' motions for summary judgment must therefore be Granted, and defendant's motion for summary judgment must be Denied.

It is so ordered.