# ACCARDI ET AL. v. PENNSYLVANIA RAILROAD CO.

No. 280.   Argued January 20, 1966.—Decided February 28, 1966.

226

*Richard A. Posner* argued the cause for petitioners, *pro hac vice,* by special leave of Court. With him on the brief were *Solicitor General Marshall, Assistant Attorney General Douglas, Alan S. Rosenthal* and *Richard S. Salzman.*

*Edward F. Butler* argued the cause for respondent. With him on the brief was *R. L. Duff.*

Mr. Justice Black delivered the opinion of the Court.

Petitioners, who are World War II veterans and former employees of the Pennsylvania Railroad, brought this action claiming that their former employer denied them certain seniority rights guaranteed by § 8 of the Selective Training and Service Act of 1940.[1] Section 8 (b)(B) of that Act provides that upon application by any former employee who has satisfactorily completed his military service, a private employer "shall restore" such honorably discharged serviceman to his former "position or to a position of like seniority, status, and pay unless the employer's circumstances have so changed as to make it impossible or unreasonable to do so." Section 8 (c)

---

[1] 54 Stat. 890, as amended, 50 U. S. C. App. § 308 (1946 ed.). Section 8 of the 1940 Act is now § 9 of the Universal Military Training and Service Act, 62 Stat. 614, as amended, 50 U. S. C. App. § 459 (1964 ed.).

re-emphasizes § 8 (b)(B) by providing that any person so restored "shall be so restored without loss of seniority."

The facts in this case are undisputed. In 1941 and 1942 the six petitioners began working as firemen on tugboats owned by the Pennsylvania Railroad and operated in the Port of New York. Petitioners left their jobs in 1942 and 1943 to enter the armed services and after serving three years or more each received an honorable discharge. Shortly after discharge each was restored by the railroad to his former position as fireman with the same amount of seniority he had before leaving plus credit for the time spent in the armed forces, as required by the 1940 Act. All six continued to work for the railroad until 1960. In 1959 a labor dispute broke out when the Pennsylvania and nine other railroad carriers operating tugboats claimed that firemen were not necessary on the new diesel tugs, and the owners of the tugs sought to abolish the craft and class of fireman. The unions affected called a strike. This strike was settled in 1960 when petitioners' union and the railroads entered an agreement which abolished the position of fireman on all diesel tugs. As their part of the bargain the railroads agreed to retain in their employ firemen with 20 years or more seniority who desired to remain, but all firemen with less than 20 years seniority were discharged. To make this settlement more acceptable to the employees, those who were discharged or who did not desire to stay with the railroads were paid a severance or separation allowance based on a formula set out in the agreement. Each of the petitioners involved in this case left his job with the Pennsylvania Railroad and received a separation allowance, but each received less than he thought was due. This lawsuit was begun as an attempt to recover what each believed was owed him by the railroad.

The amount of the separation allowances was determined, according to the language of the agreement, by

the length of "compensated service" with the railroad. A month of "compensated service" was defined as any month in which the employee worked one or more days and "a year of compensated service is 12 such months or major portion thereof." In computing petitioners' separation allowances the railroad did not include the years spent in the armed forces as years of "compensated service." Petitioners claim this was error and contrary to § 8 of the Selective Training and Service Act of 1940. Each petitioner received $1,242.60 less than he would have if given credit for the three or more years he spent in military service and the parties have stipulated that if petitioners are entitled to have the time in the service included in determining severance pay, judgment for this amount should be rendered for each of them. The District Court rendered judgment for petitioners. The Court of Appeals reversed, holding, contrary to the District Court, that the petitioners were not entitled to credit for their time in the service in computing the allowances because the allowances did not come within the concepts of "seniority, status, and pay." 341 F. 2d 72.

The language of the 1940 Act clearly manifests a purpose and desire on the part of Congress to provide as nearly as possible that persons called to serve their country in the armed forces should, upon returning to work in civilian life, resume their old employment without any loss because of their service to their country. Section 8 (b)(B) of the statute requires that private employers reinstate their former employees who are honorably discharged veterans "to [their former] position or to a position of like seniority, status, and pay," and § 8 (c) provides that such a person "shall be so restored without loss of seniority." This means that for the purpose of determining seniority the returning veteran is to be treated as though he has been continuously employed during the period spent in the armed forces. *Fishgold* v.

*Sullivan Corp.*, 328 U. S. 275, 284–285. The continuing purpose of Congress in this matter was again shown in the Universal Military Training and Service Act, 62 Stat. 604, as amended, 50 U. S. C. App. § 451 *et seq.* (1964 ed.). Section 9 (c)(2) of that Act provides:

> "It is hereby declared to be the sense of the Congress that any person who is restored to a position in accordance with the provisions of paragraph (A) or (B) of subsection (b) [of this section] should be so restored in such manner as to give him such status in his employment as he would have enjoyed if he had continued in such employment continuously from the time of his entering the armed forces until the time of his restoration to such employment."

Respondent railroad does not quarrel with this interpretation of the statute but insists that the severance pay involved here was not based on seniority and that §§ 8 (b)(B) and (c) are wholly inapplicable to this case.

The term "seniority" is nowhere defined in the Act, but it derives its content from private employment practices and agreements. This does not mean, however, that employers and unions are empowered by the use of transparent labels and definitions to deprive a veteran of substantial rights guaranteed by the Act. As we said in *Fishgold* v. *Sullivan Corp., supra,* "[N]o practice of employers or agreements between employers and unions can cut down the service adjustment benefits which Congress has secured the veteran under the Act." At 285. The term "seniority" is not to be limited by a narrow, technical definition but must be given a meaning that is consonant with the intention of Congress as expressed in the 1940 Act. That intention was to preserve for the returning veterans the rights and benefits which would have automatically accrued to them had they remained in private employment rather than responding to

the call of their country. In this case there can be no doubt that the amounts of the severance payments were based primarily on the employees' length of service with the railroad. The railroad contends, however, that the allowances were not based on seniority, but on the actual total service rendered by the employee. This is hardly consistent with the bizarre results possible under the definition of "compensated service." As the Government[2] points out, it is possible under the agreement for an employee to receive credit for a whole year of "compensated service" by working a mere seven days. There would be no distinction whatever between the man who worked one day a month for seven months and the man who worked 365 days in a year. The use of the label "compensated service" cannot obscure the fact that the real nature of these payments was compensation for loss of jobs. And the cost to an employee of losing his job is not measured by how much work he did in the past— no matter how calculated—but by the rights and benefits he forfeits by giving up his job. Among employees who worked at the same jobs in the same craft and class the number and value of the rights and benefits increase in proportion to the amount of seniority, and it is only natural that those with the most seniority should receive the highest allowances since they were giving up more rights and benefits than those with less seniority. The requirements of the 1940 Act are not satisfied by giving returning veterans seniority in some general abstract sense and then denying them the perquisites and benefits that flow from it. We think it clear that the amount of these allowances is just as much a perquisite of seniority as the more traditional benefits such as work preference and order of lay-off and recall. We hold that the failure to credit petitioners' "compensated service" time with the

---

[2] The Department of Justice is representing petitioners in this case pursuant to § 8 (e) of the 1940 Act.

period spent in the armed services does not accord petitioners the right to be reinstated "without loss of seniority" guaranteed by §§ 8 (b)(B) and (c).

What we have said makes it unnecessary to discuss in detail the Court of Appeals' holding that these allowances did not come within the concepts of "seniority, status, and pay" and thus were governed not by § 8 (b)(B) and the part of § 8 (c) relating to seniority but rather by the clause in § 8 (c) stating that returning veterans "shall be entitled to participate in insurance or other benefits offered by the employer pursuant to established rules and practices relating to employees on furlough or leave of absence in effect with the employer at the time such person was inducted into such forces . . . ." The Government contends that the "other benefits" clause of § 8 (c) was added to the bill "for the express purpose of entitling employees to receive, while in service, such benefits as their employers accorded employees on leave of absence." The legislative history referred to in the Government's brief persuasively supports such a purpose.[3]

---

[3] Senator Sheppard in explaining an amendment which included the "other benefits" provision said:

"That amendment would make certain that all trainees would receive the same insurance and other benefits as those who are on furlough or leave of absence in private life. It seems to me to be a good suggestion." 86 Cong. Rec. 10914.

And Congressman May, the Chairman of the House Committee on Military Affairs, had this colloquy with another Congressman on the same question:

"Mr. MILLER. In reference to insurance, will that apply to group insurance? Many industrial plants, of course, carry group insurance. Under those contracts they continue their participation while a man is on vacation or on furlough. Would they continue those policies in force?

"Mr. MAY. This would continue them in force and that is the very purpose of the legislation." 86 Cong. Rec. 11702.

This argument of the Government—that the "insurance or other benefits" clause was put in to provide these company benefits for the serviceman at the time he was in the armed forces—also finds some support in the fact that § 8 (c) provides that the serviceman would be entitled to these benefits only if they were "in effect with the employer at the time such person was inducted into such forces . . . ." Without attempting in this case to determine the exact scope of this provision of § 8 (c) it is enough to say that we consider that it was intended to add certain protections to the veteran and not to take away those which are granted him by § 8 (b)(B) and the other clauses of § 8 (c).

Since the Court of Appeals held that the provisions of § 8 (b)(B) did not apply to separation allowances it found it unnecessary to decide an alternative ground which the railroad contended should cause reversal. That contention was that since the agreement between the railroad and the union was entered into more than one year after petitioners were restored to their employment, the Act has no application to any rights created by the agreement. This argument rested on that part of § 8 (c) which provides that a veteran who is restored to employment "shall not be discharged from such position without cause within one year after such restoration." The District Court rejected the contention as having no merit. We agree with the District Court and believe this contention to be so wholly without merit that the case need not be remanded to the Court of Appeals for its decision on the point. In *Oakley* v. *Louisville & N. R. Co.*, 338 U. S. 278, 284, we said:

> "[T]he expiration of the year did not terminate the veteran's right to the seniority to which he was entitled by virtue of the Act's treatment of him as though he had remained continuously in his civilian employment; nor did it open the door to discrimina-

tion against him, as a veteran. . . . His seniority status . . . continues beyond the first year of his reemployment . . . ."

What we said there governs this case. The District Court was correct in rejecting this contention of the railroad.

In the Court of Appeals the railroad also contended that the District Court had improperly computed the interest owing on the judgment awarded the plaintiffs. Because of its holding that petitioners were entitled to no recovery at all the Court of Appeals declined to decide the question of interest. The record before us does not present that question with sufficient clarity for us to pass upon it.

We affirm the judgment of the District Court holding that petitioners are entitled to recover from the railroad the stipulated damages due them because they are entitled to credit for the full amount of time served in the armed forces in calculating their severance pay. But the cause is remanded to the Court of Appeals for further consideration of the interest contention.

*Reversed and remanded.*

THE CHIEF JUSTICE took no part in the decision of this case.