James J. HATTON, Plaintiff,

v.

TABARD PRESS CORP., Defendant.

No. 65 Civ. 1479.

United States District Court
S. D. New York.

June 27, 1966.

Robert M. Morgenthau, U. S. Atty., S. D. N. Y., by John R. Horan, New York City, of counsel, for plaintiff.

Buell, Clifton & Turner, New York City, for defendant.

## OPINION

EDELSTEIN, District Judge.

Plaintiff and defendant have both moved for summary judgment. Plaintiff, an honorably discharged army veteran, seeks a pay increment allegedly due from his employer pursuant to 50 U.S.C. App. § 459 (1964). The following facts are not in dispute. Plaintiff, James J. Hatton, was employed by the defendant, Tabard Press, from January 25, 1960, until January 25, 1962, when plaintiff entered the armed forces. During his first year's employment Hatton's duties related only to menial tasks, including the carrying of proofs, papers and packages to and from customers. Thereafter, on or about January 25, 1961, he was made a miscellaneous composing room employee. His work involved messenger duties, sorting and putting away implements of the printing trade, pulling proof from proof presses and operating proof presses. While serving in the army from January 1962 through December 1963 plaintiff did no printing industry work. After being honorably discharged in December 1963, plaintiff returned to employment with defendant Tabard Press and was assigned work similar to that done after January 25, 1961. As a result of negotiations with the union Hatton's salary was raised to that of an employee who had been with Tabard Press more than one year but less than two years. Plaintiff contends that his two years of military service should be included in determining his wage rate, or, in other words, that he should be paid as an employee who had been with Tabard Press for more than three but less than four years.

■ The Universal Military Training and Service Act seeks to ensure that servicemen will not be penalized because of being called into service. The particular terms and conditions of employment for all employees including ex-servicemen, however, are defined by the relevant collective bargaining agreement. See, *e. g.*, Aeronautical Indus. Dist. Lodge 727 v. Campbell, 337 U.S. 521, 69 S.Ct. 1287, 93 L.Ed. 1513 (1949); Fishgold v. Sullivan Drydock & Repair Corp., 328 U.S. 275, 66 S.Ct 1105, 90 L. Ed. 1230 (1946). Both the benefits and limitations of collective bargaining agreements arrived at while the former employee was in service are equally applicable to the ex-serviceman as to any other worker who was continuously employed when the agreement was negotiated, Aeronautical Indus. Dist. Lodge 727 v. Campbell, supra, so long as the collective bargaining agreement does not treat veterans differently from non-veterans. Id. 337 U.S. at 529, 69 S.Ct. 1287.

■ Although the earlier decisions emphasized the "furlough" language in the original Act, the Supreme Court has incorporated the so-called "escalator" principle which subsequently received express congressional approval. A serviceman

"should be so restored in such manner as to give him such status in his employment as he would have enjoyed if he had continued in such employment continuously from the time of his entering the armed forces until the time of his restoration to such employment." 50 U.S.C. App. § 459(c) (2) (1964).

See Accardi v. Pennsylvania R.R., 383 U.S. 225, 86 S.Ct. 768, 15 L.Ed.2d 717 (1966); Tilton v. Missouri Pac. R.R., 376 U.S. 169, 84 S.Ct. 595, 11 L.Ed.2d 590 (1964). Thus the Act has been construed to require promotions which under the collective bargaining agreement are automatic based on the passage of time or "some other form of automatic progression," McKinney v. Missouri Kansas-Texas R.R., 357 U.S. 265, 272, 78 S.Ct. 1222, 1227, 2 L.Ed.2d 1305 (1958). It has not been construed, however, to require promotions which are based on merit, see Borges v. Art Steel Co., 246 F.2d 735, 739 (2d Cir. 1957), and employer discretion, McKinney v. Missouri Kansas-Texas R.R., supra 357 U.S. at 271–273, 78 S.Ct. 1222. The term "automatic" refers to what is reasonably foreseeable. See Tilton v. Missouri Pac.

R.R., supra 376 U.S. at 178–181, 84 S. Ct. 595. It does not, for example, require proof that work would have been available or that sickness would not have intervened. Id. at 180–181, 84 S.Ct. 595. Moreover, it is the actual industry practice under the collective bargaining agreement (not merely the terms of the agreement) that controls. See McKinney v. Missouri Kansas-Texas R.R., supra 357 U.S. at 273–274, 78 S.Ct. 1222.

In the instant case the relevant contract was negotiated by the New York Typographical Union No. 6 as agent for the Printing Utilities Branch of · New York Typographical Union No. 6, (hereafter referred to as the "Branch"). The principal contract entered into between the New York Typographical Union No. 6 and the Printers League Section (which apparently includes Tabard Press Corp.) contained detailed descriptions of the terms and conditions of employment for skilled workers such as journeymen and apprentices and also contained detailed requirements for the advancement of apprentices. The "Branch" contract, relating only to miscellaneous composing room employees not within one of the skilled classifications, provided no detailed criteria for advancement. It simply provided that the minimum wage scale for such employees would be a specific proportion of the base contract pay scale set forth in the Typographical Union No. 6 contract. Thus "Branch" contract employees beginning without experience would receive during the first year 38% of the base contract pay scale provided for in the Typographical Union contract. Similarly, "Branch" contract employees with "more than one year's, but less than two years' experience" would receive 43% of the base contract pay scale provided for in the Typographical Union contract. A chart incorporated in the "Branch" contract converted these proportions into weekly and hourly pay figures. But the chart did not contain the "years' experience" language. It simply referred to "2nd year," "3rd year," etc.

Plaintiff contends that there was no proficiency test of any kind administered to miscellaneous composing room employees covered by the "Branch" contract. There was no requirement or policy requiring such employees to know how to perform any specific task. Assignment to various tasks was at the discretion of the foreman, and in effect, that advancement in pay occurred automatically with the passage of time.

Respondent, on the other hand, urges that the pay increments were designed to reward proficiency and skill and "mere continuous employment with Tabard during the period of plaintiff's military service would not have been a basis for advancement. * * *" Defendant's memorandum p. 7. It also affirms that "Tabard conforms to industry practice by evaluating the dexterity and skill of printing utility employees on a day-to-day basis, to determine whether the experience thus gained and demonstrated warrants an employee's experience progression. * * *" Affidavit of Nathan Sorkin (President of Tabard Press) ¶14.

The criterion to be applied is what is the actual practice as to all employees (veterans and non-veterans alike) whose pay is regulated by the relevant contract provisions. If, as appears, other employers have agreed to the same contract, then the industry practice and not merely this employer's practice would be relevant. The mere fastening of labels, such as "experience" or "compensated service" is not controlling. See Accardi v. Pennsylvania R.R., supra 383 U.S. at 227–231, 86 S.Ct. 768.

Whether the phrase "years' experience" was intended to mean and in practice did mean simply time employed and therefore resulted in automatic pay advancement, or whether "years' experience" meant increasing proficiency and therefore resulted in pay advancement dependent upon the employer's evaluation, is a genuine issue of fact (or perhaps more accurately a mixed question of fact and law) within the meaning of. Fed.R.Civ.P. 56.

There is no shortcut for an adequate record, based on full discovery and trial, disclosing the actual industry practice as to employees in the plaintiff's classification. There is a controlling question of fact which cannot be decided on the papers and affidavits submitted and therefore both motions for summary judgment are denied.

Motions denied. So ordered.