Richard E. McCOY, Plaintiff,

v.

OLIN MATHIESON CHEMICAL COR-
PORATION, a corporation,
Defendant.

Civ. A. No. 4774.

United States District Court,
S. D. Illinois, S. D.

July 26, 1973.

Donald B. Mackay, U. S. Atty., Spring-field, Richard J. Fiore, Dept. of Labor, Chicago, for plaintiff.

Alfred F. Newkirk, Springfield, for defendant.

## DECISION AND ORDER

ROBERT D. MORGAN, Chief Judge.

This cause arises under Section 9 of the Military Selective Service Act of 1967, as amended, 50 U.S.C.App. § 459. Plaintiff's complaint against defendant, Olin Corporation (impleaded as Olin Ma-thieson Chemical Corporation), demands judgment requiring Olin to reinstate him as an employee following his military service and to respond to him in damages for prior refusal of his request for rein-statement. Following a bench trial, the merits of the cause are before the court.

As a preface to specifically stated find-ings of fact, conclusions of law and judg-ment, this narrative statement of undis-puted facts is made with some observa-tions thereon, and on the case in general.

Olin operates a manufacturing plant, at which it has, at all times here material, engaged in the business, among others, of manufacturing shotgun shells and other products involving the use of explosives. On December 5, 1966, plaintiff was employed by Olin in its slitter department as a table operator. He submitted to the customary physical examination by Olin physicians prior to that employment. He subsequently bid, successfully, for the position of slitter operator. Because of plant layoffs imminent when that bid was approved, plaintiff was assigned by Olin to another department as a loading operator on April 3, 1967.

That employment continued until plaintiff was called to active service in the United States Navy on May 4, 1967.

Plaintiff was assigned by the Navy to a base in San Diego, California, for training as a hospital corpsman. Following training he was assigned to duty at Port Hueneme, California, and became a "Hospitalman" at grade E–3. In March 1968, plaintiff attempted suicide with pills and slashing his wrist with a razor because of depression over supposed unfaithfulness of a girl friend. Following a short period of hospitalization and physical recuperation, he returned to his unit, where, however, he was reassigned to the records section instead of to his specialty as hospital corpsman. Unquestionably, that change in his duties led to disciplinary problems which led to plaintiff's subsequent discharge. He was discharged from the Navy "under honorable conditions" on December 20, 1968, having been informed that the reason was "unsuitability."

Within ninety days after that date, plaintiff applied to Olin for reemployment as a slitter operator. Reemployment was refused because of Olin's posi-tion that his attempt at suicide during military service rendered him dangerous to fellow employees and to the company in an explosive plant, and that he was thus unsuitable for reemployment.

Subsequently, after examination by two psychiatrists on plaintiff's own behalf, neither of whom was called at the trial by either party, it was agreed between the parties that plaintiff would submit himself for psychological and psychiatric examination at the Madison County Mental Health Center at Alton, Illinois. Such testing and evaluation were done at the Center by Doctors Powell and Hempel, to develop professional opinion on plaintiff's suitability for employment at defendant's plant. Both doctors concluded, and so reported to Olin, that plaintiff, while suffering from "passive-progressive personality," was suited for such employment.[1] Both reports were received in evidence by agreement. Notwithstanding these reports, Olin continued its refusal to reemploy plaintiff.

In the interim period between his application for reemployment and the time of trial, plaintiff had been employed in various capacities by hospitals and industrial employers. At the time of trial, plaintiff resided at Dallas, Texas, where he was then employed as a bus driver.

At the trial of the cause, plaintiff testified in his own behalf and presented the testimony of Doctor Powell and Doctor Hempel.

Olin called no witnesses and presented no testimonial evidence except cross-examination. During its cross-examination of Doctor Hempel, it moved the admission of Defendant's Exhibit 2, which is a United States Navy clinical record involving plaintiff. It being shown that that record had been considered by Doc-

---

[1]. The psychologist stated the firm opinion that, while no human being could be predicted with absolute certainty, roughly ten percent of the population, on test, would probably show conditions similar to plaintiff, and that there is nothing to indicate any mental problem which might make plaintiff a dangerous employee at Olin's plant. It was the psychiatrist's opinion that plaintiff would be "as safe as the average." It seems of major significance that there is no evidence of pre-employment testing by Olin of anyone for the type of condition they state makes plaintiff unsuitable.

tors Powell and Hempel in the course of their evaluation of plaintiff, the same was admitted in evidence, subject to plaintiff's objection that it is hearsay. That exhibit has been considered by the court in that context, only for its bearing upon evaluation of the testimony of Doctors Powell and Hempel.

With that background of undisputed facts, the court finds the specific facts and legal conclusions related to the issue of plaintiff's alleged right to reemployment as follows:

## FINDINGS OF FACT

1. Defendant, Olin, a corporation, has an office and large manufacturing facility located at East Alton, in Madison County, Illinois, within the jurisdiction of this court.

2. Plaintiff was employed by Olin at its said plant during the period of time from December 5, 1966, until on or about May 4, 1967, when he was inducted into the active military service of the United States.

3. At the time of his assuming employment, plaintiff was found by Olin to be qualified and suited for employment, and he was employed in various jobs, including work on a machine for loading shells and cartridges.

4. Plaintiff's employment by Olin was at all times in positions other than temporary.

5. Plaintiff's work classification, that is the job to which he had rights, but for the force reduction, at the time of his induction for active military duty, was that of "Slitter Operator."

6. Plaintiff was inducted for active duty in the United States Navy on May 4, 1967, and the period of his active service continued until December 20, 1968.

7. Plaintiff attempted suicide in March 1968, during the period of his Navy service. He had suffered from nervousness since high school, or before, and was on medication therefor at this time.

8. On December 20, 1968, plaintiff received a discharge from the Navy "under honorable conditions," by virtue of which he became entitled to claim his statutory right to reemployment, subject only to his timely application therefor and his continued qualification for such employment.

9. On about January 7, 1969, within the statutory period therefor, plaintiff applied for reemployment by Olin. He received a physical examination by an Olin doctor and was found to be physically qualified for reemployment. Plaintiff was later advised by Olin's doctors that he would not be reemployed because of the fact, as reflected by his Navy record, that he had attempted suicide. Olin still refuses to reinstate plaintiff.

10. By agreement of the parties, and at Olin's suggestion, plaintiff was given both psychological and psychiatric examinations at the Madison County Mental Health Center, Alton, Illinois.

a. The psychological examination was performed by Dr. Barbara Powell, a clinical psychologist. It consisted of a clinical interview followed by a series of psychological tests which are designed to reveal evidence of any emotional, personality, or mental deficiencies suffered.

b. The psychiatric examination and evaluation were conducted by Dr. Warren Hempel, the medical director of the said Mental Health Center.

c. Plaintiff's Navy medical records were considered by Doctors Powell and Hempel for their bearing upon evaluation of the psychological and psychiatric examinations.

11. Under date of August 19, 1969, reports of those clinical evaluations of plaintiff were submitted to Olin, which said reports are consistent with the doctor's testimony at the trial, as follows:

a. Doctor Hempel's examination of plaintiff revealed no destructive tendencies.

b. Psychological evaluation of plaintiff by Doctor Powell revealed no evidence of psychotic thinking which would indicate that he is dangerous; no de-

structive or suicidal tendencies; and nothing to indicate that he suffered from any psychological problems which would render him dangerous as an Olin employee; and that while he had a passive-aggressive personality, it would in no sense render him unsuited for employment by Olin.

12. Doctors Powell and Hempel are qualified and credible expert witnesses whose testimony is not contradicted or discredited in any way by any evidence before the court.

13. Plaintiff testified to a steady pattern of employment subsequent to his discharge from the Navy. At the time of trial he had been married for about four years and had one son. He had not been hospitalized nor on medication for nervousness or otherwise since his discharge from the service.

14. There is no evidence before the court having any tendency to prove that plaintiff is in any degree less mentally or emotionally qualified or more dangerously unsuited for reemployment by Olin than any number of other employees whom Olin has apparently not found it worthwhile to examine and evaluate in this regard.

## CONCLUSIONS OF LAW

1. The court has jurisdiction of the parties and the subject matter of this cause of action. 50 U.S.C.App. § 459.

█ █ 2. It is presumed under the law that a veteran, who was qualified for his employment status upon its termination by his entry into the active military service of the United States, remains qualified to claim reemployment upon his discharge from such active military service. It is further presumed that, absent interruption of employment by his military induction, he would have remained in the employ of his employer, would have performed satisfactorily and would have done all things necessary to assure himself of employment benefits, including seniority status. An employer who refuses to reemploy a discharged veteran who has timely applied for re-employment has the burden of proving the veteran's disqualification for re-employment. Brickner v. Johnson Motors, 299 F.Supp. 1005, 1007 (N.D.Ill. 1969), aff'd, 425 F.2d 75 (7 Cir. 1970); Burke v. Boston Edison Company, 279 F.Supp. 853, 856 (D.Mass.1968); Hall v. C. & E. I. R. R., 240 F.Supp. 797, 801 (N.D.Ill.1964).

3. Defendant has not sustained such burden in this case.

4. The fact of plaintiff's attempted suicide in March 1968, or plaintiff's other breaches of duty in the service, does not support any inference that plaintiff is disqualified for reemployment by Olin, as potentially dangerous or otherwise.

5. The credible evidence of record is consistent only with the conclusion that plaintiff was qualified for his employment when employment was interrupted by his military induction, and that he is now, and at all material times, qualified for reemployment.

█ 6. Olin's refusal to reemploy plaintiff is a violation of 50 U.S.C.App. § 459(b)(B)(i). Any other holding on this record would virtually nullify this statutory right of veterans of the armed forces.

7. Plaintiff is entitled to judgment compelling Olin to offer him prompt re-employment in the position of Slitter Operator, the classification which he held, but for plant layoff, when his employment was interrupted by his military service. Brickner v. Johnson Motors, *supra*; Power v. Northern Illinois Gas Co., 388 F.2d 427, 429 (7 Cir. 1968). There is no evidence before the court that he would not have actually occupied this classification long prior to December 1968, but for military service.

8. Plaintiff is entitled to a judgment against Olin for damages measured by the difference between his actual earnings received from other employers and earnings which he would have received from Olin had he been reemployed as a Slitter Operator on February 1, 1969. 50 U.S.C.App. § 459(d); Accardi v. Pennsylvania R. R., 383 U.S. 225, 228, 86 S.Ct.

768, 15 L.Ed.2d 717. (1966); Helton v. Mercury Freight Lines, Inc., 444 F.2d 365, 367 (5 Cir. 1971). There is insufficient data before the court to permit accurate computation of such damages, if any.