Frank S. LITWICKI, Appellant in No. 74–1174,

v.

PITTSBURGH PLATE GLASS INDUS-TRIES, INCORPORATED, Appellant in No. 74–1175.

Nos. 74–1174, 74–1175.

United States Court of Appeals, Third Circuit.

Argued Oct. 31, 1974.

Decided Dec. 11, 1974.

Carla A. Hills, Asst. Atty. Gen., Richard L. Thornburgh, U. S. Atty., Robert E. Kopp, John K. Villa, Attys., Dept. of Justice, Washington, D. C., for Frank S. Litwicki.

Hugh M. Finneran, Pittsburgh, Pa., for Pittsburgh Plate Glass Industries, Inc.

Before FORMAN, ALDISERT and ROSENN, Circuit Judges.

## OPINION OF THE COURT

ROSENN, Circuit Judge.

This appeal presents the question whether benefits under a funded noncontribution pension plan are seniority rights which, by statute, a private employer must accord returning veterans as though they had remained on the job during the period of their military service. See Selective Training and Service Act of 1940, ch. 720, § 8, 54 Stat. 890, as amended, Selective Service Act of 1948, ch. 625, § 9, 62 Stat. 614, 50 U.S.C. App. § 459 (1970) [hereinafter referred to as the "Act"].

The plaintiff, a veteran represented by the United States Attorney pursuant to 50 U.S.C. App. § 459(d)(1970), brought this action to secure pension benefits which he alleges are wrongfully being denied him by his employer, defendant Pittsburgh Plate Glass Industries, Incorporated (PPG). Specifically plaintiff claims that PPG, both in determining whether his pension vested and in computing the amount of his pension benefits, must give him "continuous service" credit for the entire period he spent in military service. On cross-motions for summary judgment, the United States District Court for the Western District of Pennsylvania denied defendant's motion and entered summary judgment for the plaintiff, disposing of the case as follows:

(1) For purposes of determining whether plaintiff's pension vested, plaintiff is entitled to "continuous service" credit for the entire length of his military service.

(2) For purposes of computing the amount of plaintiff's pension, plaintiff is entitled to "continuous service" credit only for the portion of his military service which coincided with open hostilities during the Korean War.

Plaintiff appealed and PPG cross-appealed.

The facts have been stipulated and are not in dispute. Plaintiff's first tour of duty in the armed forces of the United States extended from January 27, 1947, until June 14, 1948. He initially became an employee of PPG on January 22, 1951, and continued in its employ until February 2, 1954, when he volunteered during the Korean War for additional military service. This second tour of duty ended on November 26, 1957, after which plaintiff promptly returned to employment with PPG. Plaintiff remained in PPG's employ until September 29, 1969, the date of his retirement.

Under the pension agreement[1] between PPG and plaintiff's union, an employee must accumulate ten years of "continuous service" before his pension vests. "Continuous service" is computed according to the method set forth in Part I, section 3(B)(1) of the pension agreement:

1. Plaintiff is a member of the bargaining unit represented by United Glass and Ceramic Workers of North America, AFL–CIO, CLC. The parties to this appeal have stipulated that

  [o]n January 14, 1950, defendant and the United Glass and Ceramic Workers of

North America, AFL–CIO, CLC, plaintiff's collective bargaining representative, negotiated a Pension Agreement providing certain pension benefits for eligible bargaining unit employees. Benefits under the Agreement

Effective for the calendar year 1964 and thereafter, the number of hours actually worked as an Employee in the plants during any calendar year shall be divided by 125; the resulting quotient (rounded off to the nearest integer) shall constitute the number of ¹⁄₁₂ths of a year of continuous service for which the Employee shall be credited for such calendar year; provided, however, that an Employee shall not receive continuous service credit of more than one year in any calendar year. Except [for certain military service, union activity, temporary service in a supervisory or salaried position, jury duty, and absence caused by work-related injury or disease], no continuous service shall be credited for any period not actually worked as an Employee in the plants.

For the period 1950 through 1963,

[c]ontinuous service in any calendar year shall be credited at the rate of ¹⁄₁₂ of a year for every full 135 hours actually worked as an Employee in the plants during such calendar year, provided, however, that an Employee may not receive continuous service credit of more than one year in any one calendar year. Except [for certain military service, union activity, temporary service in a supervisory or salaried position, and, after 1954, jury duty and absence caused by work-related injury or disease], no continuous service shall be credited for any period not actually worked as an Employee in the plants.

Part I, section 3(C) of the pension agreement makes specific provision for employees who take a leave of absence to serve in the armed forces.[2]

Where an Employee, other than a temporary Employee, enters the military

are wholly paid by defendant without any contribution by employees. Although the Agreement does not require funding, the defendant has funded its obligations under the Agreement in accordance with actuarially sound principles.

2. This provision of the pension agreement has not been amended since the agreement first was adopted.

service of the United States, is discharged or relieved from active service under conditions other than dishonorable, and returns to active employment within ninety (90) days after such discharge or relief, such absence shall not constitute a break in continuous service, but for the purpose of computing the amount of his pension, only the period of service rendered in time of war or pursuant to a national conscription law plus ninety (90) days shall be considered, and years of continuous service shall be credited at the rate of ¹⁄₁₂ of a year for each calendar month of such period of service.

In determining whether plaintiff's pension vested and in calculating the amount of benefits due thereunder, PPG gave plaintiff "continuous service" credit only for his 12 months of military service during the Korean War. PPG refused to credit plaintiff's 33 months of military service after the cessation of active hostilities. Credit was denied on the basis that such military service was neither pursuant to conscription or first enlistment,[3] nor rendered during time of war. As a result, plaintiff did not meet the 10-year vesting requirement under the pension agreement and was denied pension benefits.

The district court concluded that the vesting provision of the pension agreement "deals with a right of seniority or status under Sec. 9(b)(B)(i) of the Act [50 U.S.C. App. § 459(b)(B)(i) (1970)], and that [PPG] is required by the Act to restore plaintiff to the status and seniority he would have occupied had he been in continuous service with the employer during the term of his military service." However, the amount of plaintiff's pension benefits, the district court held, was not an incident of seniority. "[T]he

3. The parties stipulated that,

[u]nder [PPG's] policy, an employee's first enlistment in the armed forces is treated as service pursuant to national conscription law for purposes of continuous service credit under the Pension Agreement whether he enlists or is drafted . . . .

amount of the pension was subject to a work requirement and was to be determined in accordance with the [pension agreement]." Although we affirm, our rationale is different from that used by the district court in concluding that plaintiff's rights under the pension agreement had vested.[4]

The Act provides that a private employer must restore a veteran upon his return from military service to his former position "or to a position of like seniority, status, and pay." 50 U.S.C. App. § 459(b)(B)(i) (1970). Any person so restored to employment

> shall be considered as having been on furlough or leave of absence during his period of training and service in the armed forces, shall be so restored without loss of seniority, shall be entitled to participate in insurance or other benefits offered by the employer pursuant to established rules and practices relating to employees on furlough or leave of absence in effect with the employer at the time such person was inducted into such forces, and shall not be discharged from such position without cause within one year after such restoration.
>
> (2) It is declared to be the sense of the Congress that any person [so restored to employment] should be so restored in such manner as to give him such status in his employment as he would have enjoyed if he had continued in such employment continuously from the time of his entering the armed forces until the time of his restoration to such employment.

50 U.S.C. App. § 459(c)(1), (2) (1970).

■ Although our primary focus is on the Act, we must carefully consider the provisions of the pension agreement under which plaintiff claims benefits. As the Supreme Court pointed out in Accardi v. Pennsylvania Railroad, "[t]he term 'seniority' is nowhere defined in the Act,

but it derives its content from private employment practices and agreements." 383 U.S. 225, 229, 86 S.Ct. 768, 771, 15 L.Ed.2d 717 (1966). In interpreting the pension agreement, however, we must not rest our inquiry upon "transparent labels and definitions." 383 U.S. at 229. We must analyze the substance of the agreement, its intent and effect, in an effort to discover the "real nature" of the pension benefits it provides. See 383 U.S. at 229–230, 86 S.Ct. 768.

In *Accardi, supra,* the Supreme Court held that the severance payments accorded by the collective bargaining agreement there involved were perquisites of seniority. These severance payments were based upon the length of an employee's "compensated service" with the Railroad. A year's "compensated service" credit, however, could be earned by working only seven days during the year. Thus, "compensated service" essentially was a measure of the number of years in which an employee appeared on the payroll, not a measure of actual work performed. An employee's longevity in the legal status of employment, a hallmark of "seniority," determined the severance pay to which he was entitled. This construction of *Accardi* is consistent with Hoffman v. Bethlehem Steel Corp. wherein this court drew "a distinction between rights which accrue with the passage of time and those for which some further act is required." 477 F.2d 860, 863 (3d Cir. 1973). *See generally* Haggard, Veterans' Reemployment Rights and the "Escalator Principle," 51 B.U.L.Rev. 539 (1971).

■ Under the pension agreement at issue on the present appeal, both the vesting and amount of an employee's pension benefits are determined with reference to the years of "continuous service" which he has accumulated. In contrast to the situation in *Accardi,* a year's "continuous service" normally can-

---

**4.** An appellate court may affirm a correct decision of a district court even when that decision is predicated upon inappropriate grounds. Helvering v. Gowran, 302 U.S. 238, 245, 58 S.Ct. 154, 82 L.Ed. 224 (1937); PAAC v. Rizzo, 502 F.2d 306 (3d Cir. 1974).

not be earned unless the employee actually works a substantial number of hours as specified in the pension agreement. A year's credit under the pension agreement as amended in 1964, for example, represents some 1500 hours of work performed in the plants. This work requirement is inconsistent with an intent to accord pension benefits on the basis of an employee's longevity with PPG.

We do not believe that the basic intent of the pension agreement is altered materially by the provisions which credit an employee with "continuous service" while absent from work. The exception for jury duty, by its very nature, can provide "continuous service" credit only during infrequent and generally short periods of absence. The exceptions to the work requirement which give credit for holding specified union offices, military service, and absence caused by work-related injury or disease provide a relatively small proportion of the total "continuous service" credit earned. Far more pervasive exceptions would be necessary to undermine the substantial work requirement embodied in this pension agreement.

In construing the pension agreement, we must bear in mind that pension benefits traditionally have been regarded as deferred wages, an integral element of the entire wage structure. *See* Inland Steel Co. v. N.L.R.B., 170 F.2d 247, 248–255 (7th Cir. 1948), cert. denied in part, 336 U.S. 960, 69 S.Ct. 887, 93 L.Ed. 1112 (1949), aff'd on other grounds, 339 U.S. 382, 70 S.Ct. 674, 94 L.Ed. 925 (1950). In 1956, the Senate Subcommittee on Welfare and Pension Funds stated:

> These employer-employee plans, whether or not collectively bargained, or whether contributed to solely by management, or on a joint management-employee basis, actually, and under existing law, proceed on the basis that the contributions to them by management are in the nature of employees' compensation for employment or, stated in another way, " . . . that the cost of an employee's service is greater than the amount currently paid him as wages . . . ."

S.Rep.No.1734, 84th Cong., 2d Sess. 3 (1956).

Our analysis of this pension agreement leads us to the firm conclusion that the benefits therein provided are not perquisites of seniority under the Act. These pension benefits essentially are deferred compensation based upon a substantial work requirement. Thus we hold that, neither for purposes of vesting nor for purposes of calculating amount of pension benefits, does the Act require that credit be given for military service. This, however, does not end the matter.

▮ We believe that the pension agreement itself requires that "continuous service" credit be given in determining whether plaintiff's pension vested. Part I, section 3(C) of the agreement, *supra,* provides that when an employee enters military service and returns to active employment within 90 days after honorable discharge, "such absence shall not constitute a break in continuous service . . . ." Only "for the purpose of computing the amount of [an employee's] pension" is "continuous service" credit restricted to military service during time of war or pursuant to conscription. In view of this specific language in the pension agreement, we conclude that, even though these pension benefits are not an incident of seniority, plaintiff is entitled to full credit for his military service in determining whether his pension vested.[5] In computing the amount of his pension benefits, however, plaintiff is entitled to credit only for one year's military service during the Korean War plus 90 days, as provided in the pension agreement.

The judgment of the district court will be affirmed.

---

5. Counsel for PPG conceded this point at oral argument.