Argued May 20, affirmed July 14, reconsideration denied
August 20, petition for review denied September 16, 1975

## STATE ex rel DEPARTMENT OF VETERANS' AFFAIRS, *Appellant, v.* CITY OF SALEM (No. 82980), *Respondent.*

537 P2d 1154

*Timothy Wood,* Assistant Attorney General, Salem, argued the cause for appellant. With him on the briefs were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

*William G. Blair,* Assistant City Attorney, Salem, argued the cause for respondent. With him on the brief was William J. Juza, City Attorney, Salem.

Before Schwab, Chief Judge, and Langtry and Fort, Judges.

LANGTRY, J.

As authorized by ORS 406.050(3)[1] the director of the Department of Veterans' Affairs has brought this appeal from a decision of the circuit court denying Mr. Willis R. Owen, a "returning veteran," back pay allegedly owed by the city of Salem due to its failure to reemploy him at the proper "salary step."

Mr. Owen was hired by the city as a fire fighter on August 1, 1967, and was placed on regular status at a "Step 2" pay grade following the successful completion of a six-month probation. On February 9, 1968 he enlisted in the United States Navy and obtained a military leave of absence from the fire department as provided for in ORS 408.240.[2]

After four years as a "Damage Controlman" (entailing fire control duties) aboard an aircraft carrier, Owen was honorably discharged from military service and applied for restoration to his former position with the Salem Fire Department. On January

---

[1] In addition to his other powers and duties, the director is authorized:

"To act as agent or attorney in fact for any war veteran and the dependents or beneficiaries of any war veteran relating to rights under any federal or state law." ORS 406.050(3).

[2] ORS 408.240 provides:

"(1) Whenever any public officer or employe leaves a position after June 24, 1950, whether voluntarily or involuntarily, in order to perform military duty, such office or position shall not become vacant * * * such officer or employe shall be deemed absent on leave until his release from such active service has permitted him to resume the duties of his office or position * * *.

"(2) Subsection (1) of this section does not apply unless the officer or employe, upon the termination of such military duty, is qualified to perform the duties of such position, and makes application within 90 days after he is relieved from such military duty * * * the officer or employe shall be restored to such * * * position, the duties of which he is qualified to perform, as will provide him like seniority, status and pay, or the nearest approximation thereof, consistent with the circumstances in his case."

16, 1972 he was reemployed and assigned to the then current rate of pay for salary "Step 2." Three other fire fighters hired with Owen in 1967 had, by the time of his return in 1972, progressed to the "Step 5" pay level. In April 1973 Owen claimed the city was indebted to him for the difference between the salary he had received since being reemployed and the compensation he would have received during that period at Step 5.

On June 27, 1973 Owen was informed by the city's personnel director that no supplemental compensation would be forthcoming, in light of his determination that the

"* * * City acted properly in hiring you back on step 2 of our pay plan. As you know, advancement to the top step in our pay plan is based on merit and requires that your performance be evaluated by a superior and a recommendation for a raise must be referred to the Chief. All recommendations for salary increases are approved by this office before the City payroll clerk can change the rate of pay.

"* * * * *."

This action ensued with Owen's amended complaint alleging that under ORS 408.240 and 408.270 he had the right to be restored to his former position without loss of seniority or other benefits, that he demanded the city comply with the Oregon statutes, and that his damages were in the form of a monthly loss in salary and the interest thereon every month from January 16, 1972.

The court below held in a letter opinion that because

"* * * the increases under the salary steps in effect during the times in question were not based solely on time in employment, but were based on the gaining of added specific training and know-

ledge for firefighting within [the city's] area * * *."

Mr. Owen had not been entitled to reemployment at a "Step 5" position. Judgment was entered accordingly.

As amended in 1951 (Oregon Laws 1951, ch 351) ORS 408.270 provides in relevant part:

"Upon the termination of any leave granted by ORS 408.240, every public employe shall be restored to his position without loss of seniority or other benefits. It is the intention of the Legislative Assembly that such employe shall be restored in such manner as to give him the status in his employment that he would have enjoyed if he had continued in such employment continuously from the time of his entering the Armed Forces until the time of his restoration to such employment * * *."

The statute is directly parallel to a corresponding section of the Universal Military Training and Service Act—50 USC App § 459(c)(2) (1971)[9]—and represents legislative adoption of the "escalator principle" first enunciated in *Fishgold v. Sullivan Corp.*, 328 US 275, 66 S Ct 1105, 90 L Ed 1230, 167 ALR 110 (1946). In the course of interpreting Section 8 of the Selective Training and Service Act of 1940[10] the

[9] "It is declared to be the sense of the Congress that any person who is restored to a position [with a private employer or the United States Government or political subdivisions thereof] * * * should be so restored in such manner as to give him such status in his employment as he would have enjoyed if he had continued in such employment continuously from the time of his entering the armed forces until the time of his restoration to such employment." 50 USC App § 459(c)(2) (1971).

[10] "* * * * *

"(b) In the case of any such person who, in order to perform such training and service, has left or leaves a position, other than a temporary position, in the employ of any employer and who (1) receives such certificate, (2) is still

court there noted that a returning veteran was to be

"* * * restored to his former position 'or to a position of like seniority, status, and pay.' * * * He is thus protected against receiving a job inferior to that which he had before entering the armed services. * * * He shall be 'restored without loss of seniority' and be considered 'as having been on furlough or leave of absence' during the period of his service for his country, with all of the insurance and other benefits accruing to employees on furlough or leave of absence. * * * Thus he does not step back on the seniority escalator at the point he stepped off. He steps back on at the precise point he would have occupied had he kept his position continuously during the war * * *." 328 US at 284-85.

In 1958 the court clarified the impact of 50 USC App § 459 as amended (after *Fishgold*) saying that

"* * * [Section 459(c)] does not guarantee

_____

qualified to perform the duties of such position, and (3) makes application for reemployment within forty days after he is relieved from such training and service—

"(A) if such position was in the employ of the United States Government, its Territories or possessions, or the District of Columbia, such person shall be restored to such position or to a position of like seniority, status, and pay;

"(B) if such position was in the employ of a private employer, such employer shall restore such person to such position or to a position of like seniority, status, and pay unless the employer's circumstances have so changed as to make it impossible or unreasonable to do so; "* * * * *

"(c) Any person who is restored to a position in accordance with the provisions of paragraph (A) or (B) of subsection (b) shall be considered as having been on furlough or leave of absence during his period of training and service in the land or naval forces, shall be so restored without loss of seniority * * *.

"* * * * *." Selective Training and Service Act of 1940, ch 720, § 8, 54 Stat 885, 890.

the returning serviceman a perfect reproduction of the civilian employment that might have been his if he had not been called to the colors. Much there is that might have flowed from experience, effort, or chance to which he cannot lay claim under the statute. Section [459(c)] does not assure him that the past with all its possibilities of betterment will be recalled. Its very important but limited purpose is to assure that those changes and advancements in status that would necessarily have occurred simply by virtue of continued employment will not be denied the veteran because of his absence in the military service. The statute manifests no purpose to give to the veteran a status that he could not have attained as of right, within the system of his employment, even if he had not been inducted into the Armed Forces but continued in his civilian employment.

"Thus, on application for re-employment a veteran is not entitled to demand that he be assigned a position higher than that he formerly held when promotion to such a position depends, not simply on seniority or some other form of automatic progression, but on the exercise of discretion on the part of the employer * * *." *McKinney v. Missouri-K.-T. R. Co.*, 357 US 265, 271-72, 78 S Ct 1222, 2 L Ed 2d 1305 (1958).

The significance, for purposes of determining the extent of a reemployed veteran's rights under 50 USC App § 459, of this distinction between benefits which become vested by virtue of continued employment alone and those awarded as the result of an employer's discretionary choice was reiterated by the court in *Accardi v. Pennsylvania R. Co.*, 383 US 225, 86 S Ct 768, 15 L Ed 2d 717 (1966); *Brooks v. Missouri P. R. Co.*, 376 US 182, 84 S Ct 578, 11 L Ed 2d 599 (1964); and *Tilton v. Missouri P. R. Co.*, 376 US 169, 84 S Ct 595, 11 L Ed 2d 590 (1964).

■ The threshold question is, therefore, the factual one of whether periodic pay increases are—in practice as well as in design⑨—(1) merit increases based upon an evaluation of the employe's proficiency or productivity, with the employer having the discretion to grant or deny the increase, or (2) "automatic" in the sense that they are solely the function of continued employment or relate only to the minimal increase in skill or productivity that flows from continued employment.

■ It is argued that, as a matter of law, the city of Salem does not have a merit pay system. Plaintiff in this case claims the advances in pay were automatic, and points to the facts that all other firemen who started when he did had advanced to Step 5, and that Fire Marshal Putnam testified that he did not remember any time when a merit pay increase had been withheld, or increased. Factual findings rendered by a trial judge in an action at law, however, have all the force and effect of a jury verdict. The circuit court's finding that

> "* * * the increases under the salary steps in effect during the times in question were not based solely on time in employment, but were based on the gaining of added specific training and knowledge for firefighting within [the city's] area * * *"

is conclusive unless that finding is unsupported by "competent and substantial" evidence in the record. *Schlatter v. Willson,* 270 Or 685, 528 P2d 1349 (1974).

■■ Personnel rules governing the "pay range" of

---

⑨ The actual terms of collective bargaining agreements or personnel rules and regulations are not controlling if actual practice under those agreements and rules is shown to be different. *See* Tilton v. Missouri P. R. Co., 376 US 169, 84 S Ct 595, 11 L Ed 2d 590 (1964); McKinney v. Missouri-K.-T. R. Co., 357 US 265, 78 S Ct 1222, 2 L Ed 2d 1305 (1958).

all city employes—rules in effect since March 1968[©] —would appear to create at least an inference that pay increases are to be granted at the city's discretion based upon its evaluation of an employe's ability:

"Merit salary increases are not automatic. Department heads shall recommend to the Personnel Officer merit increases only for those employees who have demonstrated appropriate standards of work performance. Merit increases may be to the

---

[©] The city's personnel labor relations director indicated quite clearly that none of the collective bargaining agreements entered into by the Salem Professional Fire Fighters Council Local 314 and the city had limited the applicability of Rule 4.2(c):

"A There is one common thread that runs throughout city employment, and that is the City's Personnel Rules and Regulations which were adopted in 1968 by the Council. Now, those Rules and Regulations have been amended by agreement through collective bargaining contracts. In certain areas where the contracts are silent, the Personnel Rules take precedence [sic]. Where contract dictates the personnel rules, the contract takes precendence [sic], so personnel rules continue to provide an overall framework in personnel administration only amended by the contract negotiations affecting the individual bargaining units.

"Q As far as the application of a merit program in the fire department is concerned, it applies as adopted by the Council in 1968?

"A Applies equally to all departments, yes.

"Q No other city bargaining unit contract would modify the application of the merit pay plan?

"A None does.

"Q I note that counsel made a point of establishing that the 1972-73 fiscal contract with the fire department, Plaintiff's Exhibit 12, said nothing about the merit pay plan, is that correct?

"A It didn't, but there was reference also in the contract to the City's Personnel Rules being incorporated and made a part of the contract itself."

As an additional assignment of error plaintiff contends that the trial court erred in permitting the director to testify as to the percentages of other than the fire department employes granted merit increases either greater or lesser than those set forth in the city's guidelines, on the ground that such evidence was without relevance to the question of whether the plan applicable to fire fighters was based upon merit. Because, as noted above, Rule 4.2(c) is of general applicability, this evidence was properly admitted as relevant.

next step of the salary range for the class or may be above or below the next step in five-dollar increments, based on merit." Rule 4.2(c).[7]

From the city's evidence it can be inferred that, before an increase has been granted, an individual fire fighter's performance, attitudes and training are evaluated by officers of the fire department who then recommend an appropriate disposition to the fire chief. Mr. Wacker, personnel labor relations director for the city, testified that as a matter of course his office notified all department heads in advance of an employe's eligibility for a "merit" increase, leaving each to award an increase—which might exceed that designated in the pay plan—at his or her discretion based upon the department's own evaluation of that employe. Chief Baker of the fire department testified that, upon receiving notice of an individual's eligibility for a merit increase, he requested his battalion chiefs to gather information relating to whether the raise would be justified. Fire Marshal Putnam testified that while holding the position of chief training officer from July 1971 to September 1973 he ordinarily presented to the monthly meetings of battalion chiefs his evaluation of the training and performance history of any fire fighter eligible for a merit increase, specifically noting that this evaluation covered not only basic fire fighting skills such as "ropes and knots," driver training and fire science and chemistry but also other topics peculiar to fire fighting in the Salem area including an individual's knowledge of and familiarity with local fire codes and regulations, alarm systems and communications, pumps and apparatus

---

[7] At the time Owen was initially hired the pay plan for fire fighters included six "step" increases for which an individual would become eligible over a five-and-one-half-year period; the collective bargaining agreement subsequently entered into by the fire fighters served to both increase the increments and shorten the period over which they might be earned.

used by the department, as well as his participation in "pre-fire planning" for potential fire problems unique to the city.

Both Chief Baker and Fire Marshal Putnam emphasized that the merit increases granted by the department are designed both to reward the individual fire fighter for the development of greater fire fighting skills generally and to reflect the enhanced value of that individual as a member of a company crew specially trained as a team to deal with procedures and problems unique to the Salem Fire Department.

Despite the fact that fire fighters have consistently been awarded merit increases, evidence included in the record before us is nevertheless "competent and substantial" as a basis for the circuit court's finding that the city's pay plan is designed to reward employes for something other than or in addition to mere length of service—e.g., increased proficiency and skill as a member of a specially trained fire fighting team —and that the city as employer has retained a significant measure of discretion in the awarding of the "merit" increases provided for in that plan. Having reviewed the guidelines provided by the Supreme Court and inferior federal courts,[®] we are further satisfied that as a matter of law progression through such a compensation plan is not a benefit protected by the "escalator principle" embodied in ORS 408.270.

Affirmed.

---

[®] *See* Hatton v. Tabard Press Corporation, 406 F2d 593 (2d Cir 1969); Power v. Northern Illinois Gas Company, 388 F2d 427 (7th Cir 1968); Moe v. Eastern Airlines, 246 F2d 215 (5th Cir 1957); Altgens v. The Associated Press, 188 F2d 727 (5th Cir 1951); Fon v. Histacount Corp., 77 LRRM 2024, 65 CCH Lab Cas 20,890, ¶ 11,595 (EDNY 1971).