**Forrest T. AKERS et al., Plaintiffs-Appellees,**

v.

**GENERAL MOTORS CORPORATION, Defendant-Appellant.**

**No. 73-1781.**

United States Court of Appeals, Seventh Circuit.

Argued Feb. 22, 1974.

Decided Aug. 2, 1974.

Herbert C. Snyder, Jr., Indianapolis, Ind., for defendant-appellant.

Irving Jaffe, Acting Asst. Atty. Gen., Neil H. Koslowe, Atty., U. S. Dept. of Justice, Washington, D. C., for plaintiffs-appellees.

Before KILEY, Senior Circuit Judge, SPRECHER, Circuit Judge, and JAMESON, Senior District Judge.*

* Senior District Judge William J. Jameson of the District of Montana is sitting by designation.

1. 50 U.S.C.App. § 459 (1970).

KILEY, Senior Circuit Judge.

The United States Attorney and Solicitor of Labor filed suit in the district court under § 9 of the Military Selective Service and Training Act of 1967 (Act),[1] on behalf of plaintiffs, three returning veterans. The suit sought to compel plaintiffs' employer, General Motors Corporation (GM), to award them credit units allegedly accrued during their military service under GM's Supplemental Unemployment Benefit Plan (SUB). Plaintiffs claimed that they were entitled to include those credit units in determining eligibility for and duration of SUB benefits due them during periods of layoff after reinstatement. Both GM and plaintiffs filed motions for summary judgment. The district court granted plaintiffs' motion. We affirm.

Plaintiffs Akers, Cooper and Furst were employed by GM during June and August 1968, until they entered the armed forces. Akers and Cooper were actually working for GM when they were called to active duty; Furst was in a layoff status. After their separation from the armed forces, each plaintiff filed a timely application with GM for reinstatement pursuant to § 9 of the Act, and was reinstated. GM immediately placed Akers and Furst in a layoff status,[2] and Cooper returned to active employment but was placed in a layoff status about two months later.

GM and plaintiffs' Union[3] had established SUB in their collective bargaining agreement, to provide weekly benefit payments supplementing state unemployment compensation. Under SUB, the length of time an employee in a layoff status receives benefits is based on the number of "credit units" he has accrued. These units are consumed during layoff periods as weekly benefits supplementing unemployment benefits. Hoffman v. Bethlehem Steel Corporation, 477 F.2d

2. The same status Furst had when he entered the service.

3. United Auto Workers.

860 (3rd Cir. 1973). Credit units are accrued "for each Work Week for which an Employee receives any pay from the Company" and for work weeks "for which he does not receive pay from the Company but for which he receives a [so-called] Leveling Week Benefit."[4] So that whether an employee actually works or not, one-half credit unit accrues to his benefit each week.[5] No employee under SUB may accrue to his credit at any one time more than 52 units.

The collective bargaining agreement expressly provided that an employee was not entitled to any SUB benefits while in military service, but would be entitled, on reinstatement to work, to be given the credits he accrued before entering service.[6] However, it further provided that "[s]eniority will accumulate during the period" in which he is to be given a leave of absence to enter the service.[7]

When GM, after reinstating plaintiffs, placed them in layoff status, it did not take into account SUB credit units accrued by the veterans during their respective periods of military service in computing the amount and duration of their SUB benefits. This suit in behalf of plaintiffs followed, claiming that GM thereby violated § 9 of the Act. The district court decided in favor of plaintiffs on the ground that SUB benefits were a "perquisite of seniority," and that under § 9 plaintiffs were accordingly entitled to the credit units.

The issue: Are returning veterans under the SUB plan here entitled to be given credit units during the period of their military service as part of the obligation owed them by GM under § 9(b)(B)(i) to restore them upon reinstatement to positions of "like seniority, status, and pay."[8]

■ If SUB benefits are a "perquisite of seniority," the language of para. 112 of the Agreement and of § 9 of the Act clearly support the district court's decision.[9] Assuming *arguendo* plain-

---

4. A benefit in the form of ½ credit unit per week awarded under SUB, in limited periods, to an employee laid off out of line of seniority temporarily pending an adjustment of the work force. Credit units accrued in this or any other manner under SUB have no fixed value in terms of either time or money, but are merely a means of determining eligibility for and duration of SUB benefits. Article III, Sec. 1 of the Supplemental Agreement.

5. Article III, Sec. 2(a) of the Supplemental Agreement provides as follows:
   Section 2. Accrual of Credit Units
   (a) For Work Weeks commencing on or after September 3, 1961, Credit Units shall be credited at the rate of ½ of a Credit Unit for each Work Week for which an Employee receives any pay from the Company and for Work Weeks commencing on or after January 1, 1962, for which he does not receive pay from the Company but for which he receives a Leveling Week Benefit.

6. Article III, Sec. 5, Supplemental Agreement.

7. Agreement, para. 112.

8. Section 9(b)(B)(i) reads in relevant part as follows:
   § 9(b) [50 U.S.C.App. § 459(b)]
   (b) Reemployment rights.

In the case of any such person who, in order to perform such training and service, has left or leaves a position (other than a temporary position) in the employ of any employer and who (1) receives such certificate, and (2) makes application for reemployment within ninety days after he is relieved from such training and service . . .
   *       *       *       *       *
   (B) if such position was in the employ of a private employer, such person shall—
   (i) if still qualified to perform the duties of such position, be restored by such employer or his successor in interest to such position or to a position of like seniority, status, and pay;
   *       *       *       *       *
   unless the employer's circumstances have so changed as to make it impossible or unreasonable to do so; . . . . .
   It is not disputed that plaintiffs' positions in 1968 were not "temporary" and that they were "still qualified to perform the duties of such position[s]." GM, of course, does not claim that its circumstances had changed so "as to make it impossible or unreasonable to do so."

9. Aside from the pertinent language of § 9(b)(B)(i), *supra* note 8, § 9(c) provides that a returning service man should "be . . . restored without loss of seniority."

tiffs are entitled to the benefits under § 9, the collective bargaining agreement to the contrary must give way. Hoffman v. Bethlehem Steel Corporation, *supra*, at 863.

█ Had plaintiffs not entered the military service, they would have been entitled under the collective bargaining agreement to accrue credit units at the rate of one-half credit for any week they received "any pay," and for weeks in which they received no pay (for example, in layoff status) they would receive a leveling week benefit while awaiting unemployment compensation.[10] We do not understand how GM can argue that "while on layoff" plaintiffs would not have accrued credit units in view of the clear language of Article III, Sec. 2(a) of the Supplemental Agreement. While in service, plaintiffs could not have lost "seniority" benefits; that would offend the Congressional purpose of § 9. Under the "escalator" rule announced in Fishgold v. Sullivan Drydock & Repair Corp., et al., 328 U.S. 275, 66 S.Ct. 1105, 90 L.Ed. 1230 (1946), plaintiffs here, having stepped off the escalator when entering service, as returning veterans stepped back on at the place they would have occupied had they not gotten off the escalator.

GM argues that plaintiffs are not entitled to the credits because while in service they were not then actively employed and that mere continuation of the employment relationship does not give them the right to the credits. There is no merit in this argument. They lost no seniority while in military service and under SUB were not required to perform actual work in order to receive benefits. See Accardi v. Pennsylvania R. Co., 383 U.S. 225, 86 S.Ct. 768, 15 L. Ed.2d 717 (1966).

We think plaintiffs' situations are analogous to those of the employees in *Accardi*. There, plaintiffs had been denied credit for years of "compensated service," while serving three years in military service, in determining the amount of severance pay based on the length of service with the railroad. The bargaining agreement defined a month of compensated service as any month in which an employee worked "one or more days." The Second Circuit had held that the severance pay was not includable within "seniority, status, and pay." The Supreme Court unanimously reversed. The Court thought that a different result, validating the definition of "compensated service" in the agreement, would lead to the "bizarre result" that no distinction would be made between a man who worked "one day a month for seven months" and one who worked every day of the year. p. 230, 86 S.Ct. p. 772. The Court, in consideration of the "real nature" of the severance payments, held that the failure to credit Accardi with "compensated service" for the period of his military service was a loss of seniority in violation of § 8(b)(B), the predecessor to § 9(b)(B).[11]

Under GM's contention here, an employee in a layoff status and doing no actual work is entitled, under the bargaining agreement, to accrue leveling week benefit credits; yet a veteran, also doing no actual work, is precluded by the Agreement from the same credits and benefits. See Foster v. Dravo Corporation, 490 F.2d 55, 59 (3rd Cir. 1973). Under GM's contention, when the returning veteran steps back on the escalator after his military service, he loses what the non-veteran has gained. We reject the contention because clearly, under SUB, credit units accrue as time passes, whether an employee does or does not work. We think the contention if sustained would discriminate against the veterans by depriving them of an

---

10. See note 5, *supra*.

11. In the instant case, the obvious purpose and "real nature" of SUB is to confer one of the chief advantages of seniority—protec-tion against economic loss in a period of diminishing employment. Foster v. Dravo Corporation, 490 F.2d 55, 59 (3rd Cir. 1973).

important element of seniority due them and would be a "bizarre result" as in *Accardi* and thus offend the liberal Congressional purpose of § 9.

The Supreme Court in *Accardi* stated that in determining seniority, the returning veteran is to be treated as though he had been continuously employed in the period of his service, p. 228, 86 S.Ct. 768, and that the term "seniority" should not be limited by a "narrow and technical meaning," p. 229, 86 S.Ct. p. 771. The Congressional intention was to preserve for returning veterans the rights and benefits which would "automatically accrue to them" had they not entered the service. *Id.*

In view of the SUB provision of the Agreement, as supplemented, we think that had plaintiffs not entered the service, they would automatically have accrued the credits as time passed. Since time, then, was the operative factor, the gaining of credits was related to seniority. When plaintiffs were reinstated, they were entitled not only to the credits they had when they entered service, but also to the additional credits they would have had, had they not entered. They had that right because they were continuously employed during that time. *See* Accardi v. Pennsylvania R. Co., *supra.*

The *Accardi* decision was relied upon by the Third Circuit in Hoffman v. Bethlehem Steel Corporation, *supra.* The district court there construed a bargaining agreement provision closely similar to the one before us and held that SUB benefits were not perquisites of seniority because the credits accrued on the basis of actual work. The court of appeals stated that although the SUB provision appeared to be related to actual work, the reality was the possibility of "bizarre results" as in *Accardi* since the Bethlehem plan did not distinguish

between an employee who worked one hour and one who worked forty hours in a week.[12] *Accardi* was also followed by the Second Circuit, Friendly, J. dissenting, in Palmarozzo v. Coca Cola Bottling Co. of New York, Inc., 490 F.2d 586 (2nd Cir. 1973), a severance pay case. Although he implicitly approved the *Hoffman* decision, Judge Friendly dissented on his construction of the SUB benefits there that the benefits were based on "performance rather than tenure."

We are unimpressed by the GM argument that the SUB benefits are a "form of deferred pay" or "forced savings" for past work.[13] The "leveling week" benefit can hardly be called pay or savings, and eligibility for the SUB benefits arises from the mere fact of continuing the relationship of employment. See Ewert v. Wrought Mfg. Co., 477 F.2d 128 (7th Cir. 1973). SUB credit units accrue solely according to the length of time that the beneficiary is an employee. The fact that there is a maximum of 52 credits accruable under SUB at any one time, we think, is immaterial. That may become material, however, in computing the credit units to which plaintiffs are entitled.

We follow *Accardi* and *Hoffman, supra,* in holding that plaintiffs are entitled to be given credit units during the period of their military service as part of GM's obligation under the SUB Agreement, as supplemented, and § 9.

There remain the questions of the number of credit units and the amount of SUB benefits to which each plaintiff is entitled. The complaint filed on behalf of the plaintiffs did not specify amounts. In its "Judgment" from which this appeal was taken, the district court adjudged "that each plaintiff shall have and recover of defendant an amount equal to the supplemental unem-

---

12. The *Hoffman* court did not discuss that part of the SUB provision under which employees who did no work earned credit units.

13. The courts in both *Accardi* and *Hoffman* determined that the *possibility* of "bizarre

results" (not the actual existence thereof) conclusively refuted the contention that the rights at issue there were a form of deferred pay for work performed rather than strict seniority rights.

ployment benefits lost by each plaintiff." It further ordered that "Defendant shall compute each said amount in accordance with the findings of fact and conclusions of law entered herein; and shall file a proposed amended judgment specifying the amount due to each plaintiff with the Court within thirty (30) days." The record fails to reflect whether or not the proposed amended judgment was ever filed. Accordingly, we remand for further proceedings consistent with this opinion as appropriate.

Affirmed and the cause remanded for further proceedings.

JAMESON, Senior District Judge (concurring):

The question of whether SUB benefits are perquisites of seniority within the meaning of the Military Selective Service Training Act of 1967 (50 U.S.C.App. § 459) is a close one. I concur in the result reached in Judge Kiley's opinion.

First, the SUB credits do not appear to be conditioned exclusively on the performance of work. "Those (rights) which accrue with the passage of time are seniority rights . . . ." Hoffman v. Bethlehem Steel Corporation, 477 F.2d 860, 863 (3rd Cir. 1973). To be eligible for SUB credits an employee need only receive "any pay from the Company" during a work week.[1] The term "any pay" is ambiguous. Apparently, an employee receiving pay while on vacation, sick leave, temporary layoff or an authorized leave of absence would accumulate SUB credits.[2] Thus, no actual work would be required. Because the Act is to be liberally construed for the benefit of returning veterans,[3] this ambiguity must be resolved in favor of the appellees.

Second, I agree with the Third Circuit[4] that a SUB plan of this nature provides seniority-type rights. As stated in Foster v. Dravo Corporation, 490 F.2d 55, 59 (3rd Cir. 1973): "The plan is a way of conferring, in diminished stature, one of the chief advantages of seniority, protection against economic loss in a period of diminishing employment." While the SUB credits are not seniority rights in the traditional sense, nevertheless, applying the liberal construction rule[5] to the term "seniority," I conclude that the SUB benefits are perquisites of seniority.

1. SUB plan, Article III Section 2(a) states that an employee will receive credit units "for each Work Week for which . . . (he) receives *any pay* from the Company and for Work Weeks . . . for which he does not receive pay from the Company but for which he receives a Leveling Week Benefit." (Emphasis added).

2. Article III Section 2(d) requires that an employee be on the Active Employment Roll before he is eligible to accrue SUB credits. Article IX includes on the Active Employment Roll employees on vacation, sick leave, temporary layoffs or authorized leaves of absence.

3. Fishgold v. Sullivan Drydock & Repair Corp., et al., 328 U.S. 275, 285, 66 S.Ct. 1105, 90 L.Ed. 1230 (1946).

4. In Hoffman v. Bethlehem Steel Corporation, 477 F.2d 860 (3rd Cir. 1973), the court, dealing with a SUB plan similar to that involved in the present action, concluded that the SUB credits were perquisites of seniority.

5. The Supreme Court in Accardi v. Pennsylvania R. Co., 383 U.S. 225, 229, 86 S.Ct. 768, 771, 15 L.Ed.2d 717 (1966), directed: "The term 'seniority' is not to be limited by a narrow, technical definition but must be given a meaning that is consonant with the intention of Congress as expressed in the 1940 Act."