Thomas E. COFFY, Plaintiff,

v.

REPUBLIC STEEL CORP., Defendant.

Civ. A. No. C74–217.

United States District Court,
N. D. Ohio, E. D.

March 15, 1978.

Richard J. French, John J. Horrigan, Asst. U. S. Attys., Cleveland, Ohio, for plaintiff.

Victor E. DeMarco and Michael A. Nims, Jones, Day, Cockley & Reavis, Cleveland, Ohio, for defendant.

## MEMORANDUM AND ORDER

WILLIAM K. THOMAS, District Judge.

Following the decision of the United States Supreme Court in *Alabama Power Co. v. Davis*, 431 U.S. 581, 97 S.Ct. 2002, 52 L.Ed.2d 595 (5th Cir., June, 1977), the United States Court of Appeals for this circuit vacated this court's judgment in favor of the defendant and remanded the case for reconsideration in light of *Alabama Power*. In the last paragraph of its memorandum and order of August 29, 1975, this court summarized its ruling:

> Qualification for SUB [Supplemental Unemployment Benefits] credit units does not depend upon mere passage of time. During his period of military service it is determined that plaintiff did not automatically accrue SUB credit units, as a "perquisite of seniority." Consequently, section 7.2 of the SUB Plan barring the plaintiff from receiving SUB credit units during his period of military service is valid and enforceable under section 9(c)(1) of the Act. [P. 17, original memorandum.]

Applying section 9 of the Military Selective Service Act, 50 U.S.C. § 459, the Supreme Court in *Alabama Power* determined that an employee resuming employment after military service is entitled to "credit toward his pension for his period of military service." The court considered "Davis' right to pension credit for his years in the military in light of" principles derived from prior cases relating to seniority rights under section 9 of the Act. After reviewing its most recent cases, *Accardi v. Pennsylvania R. Co.*, 383 U.S. 225, 86 S.Ct. 768, 15 L.Ed.2d

717 (1966), and *Foster v. Dravo Corp.*, 420 U.S. 92, 95 S.Ct. 879, 43 L.Ed.2d 44 (1975),[1] the Court thus stated their essence:

. . . our cases have identified two axes of analysis for determining whether a benefit is a right of seniority secured to a veteran by § 9. If the benefit would have accrued, with reasonable certainty, had the veteran been continuously employed by the private employer, and if it is in the nature of a reward for length of service, it is a "perquisite of seniority." If, on the other hand, the veteran's right to the benefit at the time he entered the military was subject to a significant contingency, or if the benefit is in the nature of short term compensation for services rendered, it is not an aspect of seniority within the coverage of § 9.

In *Alabama Power,* the Court had no trouble finding that "the reasonable certainty" requirement of earlier veteran's rights rulings in *McKinney v. Missouri K–TR Co.,* 357 U.S. 265, 78 S.Ct. 1222, 2 L.Ed.2d 1305 (1958), and *Tilton v. Missouri Pac. R. Co.,* 376 U.S. 169, 84 S.Ct. 595, 11 L.Ed.2d 590 (1964), had been met. The Court noted that "[r]espondent's [Davis's] work history both before and after his military tour of duty demonstrates that if he had not entered the military, he would al-

most certainly have accumulated accredited service for the [relevant] period." Similarly, in Coffy's case, as recognized in this court's memorandum of August 29, 1975, "the parties agree that plaintiff Coffy would have been entitled to 52 [the maximum] SUB credits at the time of his layoff had he been working at Republic rather than engaged in military service."

Turning to the "nature of the benefit itself," the second "ax[is] of analysis" to be considered, the Supreme Court confronted Alabama Power's argument that:

[P]ension payments should be viewed as compensation for service rendered like the vacation payments in *Foster,* rather than as a perquisite of seniority like the severance payments in *Accardi.*

While agreeing that "pension payments have some resemblance to compensation for work performed," the Court concluded:

Other aspects of pension plans like the one established by petitioner suggest that the "true nature" of the pension payment is a reward for length of service. The most significant factor pointing to this conclusion is the *lengthy period required for pension rights to vest in the employee.* It is difficult to maintain that a pension increment is deferred compensation for a year of actual service *when it is*

---

1. Treating Accardi's veteran's right to severance pay under the collective bargaining contract as a "perquisite of seniority," the Court thus summarized its decision:

   While questioning the company's argument because of the "bizarre results possible under the definition of 'compensated service,' *id.* [383 U.S.], at 230 [86 S.Ct., at 771], we rejected it because the 'real nature' of the payments was compensation for the lost rights and expectations that accrued as the employees' longevity on the job increased.
   431 U.S. at 588, 97 S.Ct. at 2006.

   *Foster v. Dravo Corp.* dealt with a veteran's claim for vacation pay. Foster worked for Dravo for the first seven weeks of 1967, spent eighteen months in military service, and returned to work for the last thirteen weeks of 1968. Although the collective bargaining agreement required twenty-five weeks of work in a calendar year to receive full vacation benefits, plaintiff Foster claimed entitlement to vacation pay for both 1967 and 1968. The Supreme Court in *Alabama Power* said of its holding in *Foster*:

   Again focusing on the nature of the benefit at issue, we rejected Foster's claim. Vacation benefits, we held, are "intended as a form of short term compensation for work performed," *id.* [420 U.S.], at 100 [95 S.Ct., at 854], not as a reward for longevity with an employer. In reaching this conclusion, we noted the work requirement imposed by the collective-bargaining contract, the proportionate increase in vacation benefits that resulted from overtime work, and the availability of pro rata benefits if an employee was laid off before he had worked the required number of weeks. These facts however, were sufficient only to "lend substantial support," *id.,* at 100 [95 S.Ct., at 884], to the employer's argument that the vacation benefits were a form of pay for work done. The nature of the benefits—"the common conception of a vacation as a reward for and respite from a lengthy period of labor," *id.,* at 101 [95 S.Ct. 879],—was decisive.
   431 U.S., at 589, 97 S.Ct. at 2007.

*only the passage of years in the same company's employ, and not the service rendered, that entitles the employee to that increment.* [Emphasis added.]

Thus, the Court determined that pension benefits are a perquisite of seniority; and military service counts as part of the employee's continuous service.[2]

What then is the "true nature" or "real nature" of the SUB benefit sought by Coffy under the Collective Bargaining Plan established by the United Steel Workers and Republic Steel?[3] The purpose of the SUB plan was thus described in the original memorandum:

The plan supplements "state system unemployment benefits" and provides "other benefits related to unemployment."

.        .        .        .        .

A "benefit" under the plan includes "a Weekly Benefit, Short Week Benefit, or relocation allowance." Plaintiff's [Coffy's] claim for additional credit units involves Weekly Benefits. [P. 4, original memorandum.]

This court posed the issue:

The decision in this case, applying the essence of *Foster,* turns on whether the Plan's SUB credit units are "designed to measure time on the payroll rather than hours on the job," and whether the qualification for credit units is a "work requirement [that] constitutes a bona fide effort to compensate for work actually performed." [P. 10, original memorandum.]

Applying *Foster,* the court analyzed this SUB plan upon the full evidentiary record developed at the trial and concluded:

"[H]ours worked for the Company" in any week, the first qualification for earning a ½ credit unit, meets the *Foster* test of a "work requirement." It constitutes

a bona fide effort to relate qualification for weekly benefits under the SUB Plan to work actually performed, and is designed to measure "hours on the job," rather than "time on the payroll." [Pp. 11–12, original memorandum.]

A covered Republic Steel employee depletes his SUB credits by receiving benefits during a layoff due to unemployment. Upon resuming employment, his weekly hours of work or wage substitutes (as explained in the original memorandum) rebuild his credits back to the maximum level of fifty-two credits (fifty-two weeks). Thus, this court concludes that SUB benefits are "in the nature of short term compensation for services rendered" and "not an aspect of seniority within the coverage of § 9," *Alabama Power, supra,* 431 U.S. at 589, 97 S.Ct. at 2007. Or in the words of *Aiello v. Detroit Free Press, Inc.,* 570 F.2d 145 (6th Cir., 1978) (a section 9-vacation pay case), entitlement to SUB benefits "require[s] more than continued status, such as a work requirement demanding actual performance on the job."

Moreover, the completion of "two years of continuous service prior to his lay-off" (a universal requirement of eligibility) does not relate the benefits to length of service, as plaintiff argues, since the same minimum period applies equally to all employees. Hence, judged by their "real nature," SUB benefits are not perquisites of seniority.

Plaintiff cites *Franks v. Bowman Transportation Co., Inc.,* 424 U.S. 747, 96 S.Ct. 1251, 47 L.Ed.2d 444 (1976), a Title VII case that, among other things, held that an award of seniority retroactive to the date of an individual job application was appropriate under Title VII's objective of making persons whole for injuries suffered on account of unlawful employment discrimination. The majority opinion in *Franks* recognizes that "[s]eniority systems

---

**2.** The Pension Agreement, section 5.1(b)(4) between Republic Steel Corporation and United Steel Workers of America expressly recognizes what *Alabama Power* decided; namely, that continuous service, essential to establish pension eligibility, is not broken by military service.

**3.** In overruling plaintiff's motion for reconsideration of the court's judgment of August 29, 1975, this court stated that "the court's opinion did treat—and in sufficient detail, it is believed—the 'real nature' of the SUB credits under consideration, as the court understands the meaning and present applicability of this term."

and the entitlements conferred by credits earned thereunder are of vast and increasing importance in the economic employment system of this nation." While the majority opinion speaks separately of "competitive status" seniority and "benefit" seniority,"[4] this distinction was not germane to the Court's ruling, and the Court did not decide the present issue of whether SUB benefits are a perquisite of seniority under section 9 of the Universal Military Training and Service Act of 1948. The Court's references to section 9 and cases decided under that section were rather to support the Court's holding "that employee expectations arising from a seniority system agreement may be modified by statutes furthering a strong public policy interest." *Id.* at 778, 96 S.Ct. at 1271.

Citing *Hoffman v. Bethlehem Steel Corp.*, 477 F.2d 860 (3rd Cir. 1973), and *Akers v. General Motors Corp.*, 501 F.2d 1042 (7th Cir. 1974), the plaintiff states:

> In the only two appellate decisions addressing the precise issue involved in this case, the Third and Seventh Circuits have held that SUB benefits constitute "perquisites of seniority" entitled to the protection of the Act.

This court reaffirms its refusal to follow *Hoffman* on the grounds and for the reasons stated at pp. 14–17 of its original memorandum of August 29, 1975. In part, this court in that opinion pointed out:

> Section 2.0 of the Bethlehem SUB Plan thus construed is identical with section 2.0 of the Republic SUB Plan. However, it is apparent that the court of appeals interpreted section 2.0 without benefit of the factual record developed in the present case. The facts relating to the steel industry received by this court are not mentioned in either the opinion of the court of appeals or the opinion of Judge Gourley, 335 F.Supp. 968 (W.D.Pa.1972).

> Circumstances existing in the steel industry, as revealed by the uncontradicted

evidence in this case, demonstrate that, in practice, the minimum workweek is 32 hours. Therefore, it was unrealistic for the court of appeals to say in *Hoffman* that the SUB Plan makes "no distinction . . . between an employee who works 1 hour during the week and one who works 40 hours during the week." The Plan must be construed in light of actual conditions in the steel industry. The possibility of an employee working only one hour during any week does not exist. Yet upon this hypothesis, the court concludes that "when the plan is analyzed, the same 'bizarre results' are possible under Bethlehem's plan as were possible under *Accardi.*" Given the universal employment practices of the steel industry the "bizarre results" of *Accardi* could not have occurred at Bethlehem, and have not occurred at Republic, as the facts disclose.

*Akers* involved a General Motors SUB plan that differed in an important respect from the steel industry SUB plan. The Seventh Circuit, describing the General Motors plan, stated:

> Credit units are accrued "for each Work Week for which an Employee receives any pay from the Company" and for work weeks "for which he does not receive pay from the Company but for which he receives a [so-called] Leveling Week Benefit." So that whether an employee actually works or not, one-half credit unit accrues to his benefit each week.

*Id.* at 1044. This provision of the General Motors SUB plan was crucial to the *Akers* decision. The *Akers* court stated:

> Under GM's contention here, an employee in a layoff status and doing no actual work is entitled, under the bargaining agreement, to accrue leveling week benefit credits; yet a veteran, also doing no actual work, is precluded by the

---

4. Note 1 to Judge Powell's concurring opinion, referring to "Benefit" type seniority lists as examples "pensions, paid vacation time, and unemployment insurance." This dictum cannot effect the present case. The Court in *Foster v. Dravo Corp., supra,* specifically has held

that section 9 seniority rights do not apply to "paid vacation time;" and the generalized mention of "unemployment insurance," not spoken in a section 9 context, offers no authority in this case.

Agreement from the same credits and benefits . . . Under GM's contention, when the returning veteran steps back on the escalator after his military service, he loses what the non-veteran has gained. We reject the contention because clearly, under SUB, credit units accrue as time passes, whether an employee does or does not work. We think the contention if sustained would discriminate against the veterans by depriving them of an important element of seniority due them and would be a "bizarre result" as in *Accardi* and thus offend the liberal Congressional purpose of § 9.[5]

As noted above, the "bizarre results" of *Accardi* "have not occurred at Republic, as the facts disclose."

Upon due consideration of *Alabama Power Co. v. Davis, supra,* the additional arguments of counsel since remand, and upon the entire record, this court reaffirms its August 29, 1975 ruling, its findings of facts and conclusions of law. Judgment is granted in favor of the defendant and against the plaintiff.

IT IS SO ORDERED.

---

5. *Parrish v. General Motors Corp.,* 75 CCH Lab.Cas. ¶ 10,373 (S.C.Ind.1974), dealt with the same General Motor's SUB plan and followed *Akers.*